UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x
                        :

AURELIUS CAPITAL MASTER, LTD.,   :
*et al.*,                        :

                        :      09 Civ. 2242 (RJS)

         Plaintiffs,       :

                        :

      –against–         :

                        :

MBIA INC., *et al.*,         :

                        :

         Defendants.     :

                        :
-------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>DEFENDANTS' MOTION TO DISMISS</u>

Jonathan D. Siegfried
John M. Nonna
Lawrence A. Larose
Dewey & LeBoeuf LLP
1301 Avenue of the Americas
New York, NY 10019
Telephone: (212) 259-8000
Facsimile:  (212) 259-8500

***Attorneys for Defendants***

# <u>TABLE OF CONTENTS</u>

Page

PRELIMINARY STATEMENT ..........................................................................................1

STATEMENT OF FACTS ...............................................................................................5

     A.    The Parties .............................................................................................5

     B.    Transformation ......................................................................................5

     C.    The Approval of the New York State Department of Insurance ..................7

     D.    The Allegations of the Complaint..............................................................9

ARGUMENT ...............................................................................................................12

I.    THE COMPLAINT SHOULD BE DISMISSED AS AN IMPROPER
    COLLATERAL ATTACK ON THE DECISION OF THE NEW YORK
    SUPERINTENDENT OF INSURANCE...................................................................12

II.   UNDER *BURFORD v. SUN OIL*, THE COURT SHOULD ABSTAIN IN FAVOR
    OF STATE COURT REVIEW OF THE NEW YORK STATE INSURANCE
    DEPARTMENT'S ADMINISTRATIVE DETERMINATIONS AND DISMISS
    THE COMPLAINT...............................................................................................16

     A.    Adequate State Court Review Is Available In an Article 78 Proceeding .................18

     B.    New York Has a Complex, Extensive Insurance Regulatory Scheme .......................18

     C.    The Superintendent Must Make Discretionary Interpretations of New York
         Insurance Laws .........................................................................................19

     D.    Insurance Regulation Is Traditionally a State Concern ...........................................20

III.  THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A
    CLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6).............................................................21

     A.    Counts I and II for Fraudulent Conveyance and Constructive Fraudulent
         Conveyance Fail to State a Claim................................................................21

     B.    Count III for Breach of the Implied Covenant of Good Faith and Fair Dealing
         Fails to State a Claim.................................................................................23

CONCLUSION.............................................................................................................25

## TABLE OF AUTHORITIES

**CASES**                                                                    **Page(s)**

*ARI and Co., Inc. v. Regent Int'l Corp.*, 273 F. Supp. 2d 518 (S.D.N.Y. 2003) ...............24

*ATSI Commc'ns. Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007)............................21

*Academic Health Prof'ls Ins. Ass'n. v. MQ of New York, Inc.*, No. 01 Civ. 605452,
   2003 WL 25668211 (N.Y. Sup. Ct. Apr. 14, 2003)................................................12, 13

*Alliance of Am. Insurers v. Cuomo*, 854 F.2d 591 (2d Cir. 1988) ....................................19

*Am. Centennial Ins. Co. v. Armco, Inc.*, 746 F. Supp. 350 (S.D.N.Y. 1990)...............20, 21

*Ass'n for Cmty. Reform Now v. Bloomberg*, 824 N.Y.S.2d 752,
   2006 WL 2686520 (N.Y. Sup. Ct. Sept. 19, 2006)......................................................14

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...........................................4, 21, 23

*Bethpage Lutheran Serv. Inc. v. Weicker*, 965 F.2d 1239 (2d Cir. 1992)...................17, 18

*Brass v. Am. Film Techs., Inc.*, 987 F.2d 142 (2d Cir. 1993) ..............................................2

*Brawer v. Johnson*, 647 N.Y.S.2d 553, 231 A.D.2d 664 (2d Dept. 1996) .......................14

*Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942) ............................................................17

*Brown v. AXA Re*, No. 02 Civ. 10138, 2004 WL 941959
   (S.D.N.Y. May 3, 2004)..............................................................................................24

*Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).................................................................4, 16

*Caldwell Trucking PRP Group v. Spaulding Composites Co.*,
   890 F. Supp. 1247 (D.N.J. 1995) ...............................................................................11

*Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) .................16

*Concepcion v. City of New York*, No. 05 Civ. 8501,
   2008 WL 2020363 (S.D.N.Y. May 7, 2008) ...............................................................21

*Consumers Union of U.S., Inc. v. New York*, 840 N.E.2d 68 (N.Y. 2005) .......................15

*Corcoran v. Ardra Ins. Co.*, 842 F.2d 31 (2d Cir. 1988) ..................................................17

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991) ................................2

*In re East New York Sav. Bank Depositors Litig.*, 547 N.Y.S.2d 497
  (N.Y. Sup. Ct. 1989) ................................................................................14

*Easter v. Am. W. Fin.*, 202 F. Supp. 2d 1150 (W.D. Wash. 2002) ....................................17

*In re Empire Blue Cross & Blue Shield Customer Litig.*, 622 N.Y.S.2d 843
  (N.Y. Sup. Ct. 1994) ................................................................................13

*Fiala v. Metro. Life Ins. Co.*, 776 N.Y.S.2d 29, 6 A.D.3d 320
  (1st Dept. 2004) ...............................................................................4, 12

*Filetech S.A. v. Fr. Telecom S.A.*, 157 F.3d 922 (2d Cir. 1998) ...........................................2

*Hanlin Group, Inc. v. Power Auth. of New York*, 703 F. Supp. 305
  (S.D.N.Y. 1989) .......................................................................................18

*Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085 (2d Cir. 1995) ......................................22

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) ....................................................................21

*JPMorgan Chase Bank, N.A. v. IDW Group, LLC*, No. 08 Civ. 9116,
  2009 WL 321222 (S.D.N.Y. Feb. 09, 2009)....................................................25

*Lac D'Amiante Du Quebec, Ltee v. Am. Home Assur. Co.*, 864 F.2d 1033
  (3d Cir. 1988)...........................................................................................21

*Law Enforcement Ins. Co. v. Corcoran*, 807 F.2d 38 (2d Cir. 1986) ........17, 18, 19, 20, 21

*Levy v Lewis*, 635 F.2d 960 (2d Cir. 1980)................................................4, 17, 18, 19, 20

*Long v. Marubeni Am. Corp.*, No. 05 Civ 0639, 2006 WL 1716878
  (S.D.N.Y. Jun. 20, 2006) .........................................................................25

*Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25 (1959) ........................16

*Marine Midland Bank v. Home Insurance Co.*, 693 N.Y.S.2d 550, 263 A.D.2d
  374 (1st Dept. 1999) ................................................................................14

*Mass. Mut. Life Ins. Co. v. Thacher*, 222 N.Y.S.2d 339, 15 A.D.2d 242 (1st Dept.
  1961) ..................................................................................................16, 17

*McLoughlin v. People's United Bank, Inc.*, 586 F. Supp. 2d 70 (E.D.N.Y. 2008) ...............3

*Med. Soc'y of State v. Serio*, 800 N.E.2d 728 (N.Y. 2003)................................................17

*In re MetLife Demutualization Litig.*, 156 F. Supp. 2d 254 (E.D.N.Y. 2001) ....................2

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*, 460 U.S. 1 (1983) .....................21

*Muller-Paisner v. TIAA*, 446 F. Supp. 2d 221 (S.D.N.Y. 2006).........................................2

*New Orleans Public Serv., Inc. v. Council of New Orleans*,
    491 U.S. 350 (1989)...............................................................................................16

*Prior v. Board of Trustees of New York Fire Department Pension Fund*,
    800 N.Y.S.2d 355 (N.Y. Sup. Ct. 2004) ....................................................................15

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996) ............................................16, 17

*Rowe v. Great Atl. & Pac. Tea Co., Inc.*, 385 N.E.2d 566 (N.Y. 1978) ...........................24

*Ruotolo v. City of New York*, 514 F.3d 184 (2d Cir. 2008)................................................21

*San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*,
    75 F.3d 801 (2d Cir. 1996)........................................................................................11

*SEC v. Nat'l Sec., Inc.*, 393 U.S. 453 (1969) ..................................................................20

*Serio v. Black, Davis & Shue Agency, Inc.*, No. 97 Civ. 4914,
    2005 WL 2560390 (S.D.N.Y. Oct. 11, 2005) ............................................................19

*Shah v. Metro. Life Ins. Co.*, No. 00 Civ. 108887,
    2003 WL 728869 (N.Y. Sup. Ct. Feb. 21, 2003)....................................3, 4, 12, 13, 15

*In re Sharp Int'l Corp.*, 403 F.3d 43 (2d Cir. 2005).........................................................22

*State Farm Mutual Automobile Insurance Co. v. Levin*, 702 N.Y.S.2d 694,
    263 A.D.2d 233 (3d Dept. 2000) ..............................................................................15

*State v. Khan*, 615 N.Y.S.2d 771, 206 A.D.2d 732 (3d Dept. 1994)................................14

*Steen v. Quaker State Corp.*, 785 N.Y.S.2d 551, 12 A.D.3d 989
    (3d Dept. 2004) ........................................................................................................14

*Stephens v. Cooper*, 746 F. Supp. 292 (E.D.N.Y. 1990) .........................................4, 18, 19

*Sun Oil Co. v. Burford*, 130 F.2d 10 (5th Cir. 1942) ........................................................18

*Tang v. Jinro Am., Inc.*, No. 03 Civ. 6477, 2008 WL 4163183
    (E.D.N.Y. Sept. 4, 2008)...........................................................................................24

*Travelers Ins. Co. v. Home Ins. Co.*, No. 98 Civ. 9709,
 1999 U.S. Dist. LEXIS 5523 (C.D. Cal. Feb. 22, 1999)...............................................20

*Warner Theatre Assocs. Ltd. v. Metro. Life Ins. Co.*, No. 97 Civ. 4914,
 1997 WL 685334 (S.D.N.Y. Nov. 4, 1997)...............................................................25

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) ...............................................................17

*Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490 (S.D.N.Y. 2002) ...........................24, 25

## STATUTES AND RULES

McCarran-Ferguson Act, 15 U.S.C. § 1101, *et seq* ...........................................................20

N.Y. Debt. & Cred. Law §§ 273-276...............................................................................9, 22

N.Y. Ins. Law § 201 (McKinney 2006)...................................................................7, 12, 16

N.Y. Ins. Law § 301, *et seq.* (McKinney 2006)...............................................................16

N.Y. Ins. Law § 326 (McKinney 2006)...................................................................3, 14, 15, 18

N.Y. Ins. Law § 1308 (McKinney 2006).................................................................8, 12, 19

N.Y. Ins. Law § 1309(a) (McKinney 2006)..........................................................................10, 23

N.Y. Ins. Law § 1411(d) (McKinney 2006) ............................................................8, 12, 19

N.Y. Ins. Law § 1505(a) (McKinney 2006).............................................................8, 12, 19

N.Y. Ins. Law § 1505(d) (McKinney 2006) ................................................................8, 12

N.Y. Ins. Law § 1505(e) (McKinney 2006)...........................................................................19

N.Y. Ins. Law § 4105(a) (McKinney 2006).............................................................8, 12, 19

N.Y. Ins. Law § 6904 (McKinney 2006)...............................................................................19

N.Y. Ins. Law § 6906 (McKinney 2006).................................................................8, 12, 19

N.Y. Ins. Law § 7101(g) (McKinney 2006) ...........................................................................19

N.Y. Ins. Law § 7105(a) (McKinney 2006)...........................................................................19

N.Y. Ins. Law Art. 15 (McKinney 2006)...............................................................................19

N.Y. Ins. Law Art. 71 (McKinney 2006)...........................................................................19

N.Y. C.P.L.R. (McKinney 2009) § 7803(3) ......................................................................15

N.Y. C.P.L.R. (McKinney 2009) § 7803(4) ......................................................................15

N.Y. C.P.L.R. (McKinney 2009) § 7804(g) ......................................................................15

Fed. R. Civ. P. 12(b)(1)......................................................................................................1, 2

Fed. R. Civ. P. 12(b)(6)................................................................................................1, 2, 21

Defendants MBIA Inc. ("MBIA Inc."), MBIA Insurance Corporation ("MBIA Insurance"), and MBIA Insurance Corporation of Illinois, now known as National Public Finance Guarantee Corporation ("MBIA Illinois") (collectively, "Defendants" or the "MBIA Group") submit this Memorandum of Law in support of their motion, pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure, to dismiss the Complaint for lack of subject matter jurisdiction and failure to state a claim.

## PRELIMINARY STATEMENT

This lawsuit constitutes an improper attempt by Plaintiffs to bypass the state channels of review established by the New York State Legislature – and recognized by this Court and the Second Circuit – for challenging determinations made by the New York State Superintendent of Insurance (the "Superintendent") pursuant to New York's complex and comprehensive insurance regulatory scheme.  No matter what labels Plaintiffs attach to their claims, the inescapable fact is that Plaintiffs ask this Court to unwind and set aside a series of transactions (the "Transactions") which were expressly approved by the Superintendent after lengthy and thorough review by the New York State Department of Insurance (the "Department").

The Complaint in this action ignores entirely any mention of the Superintendent's approval.  It fails to attach the Superintendent's letter setting forth his approval (the "Approval Letter"), or even acknowledge that these Transactions were undertaken by the MBIA Group only after securing the Superintendent's approval.[1]  It also does not state what the Approval Letter

---

[1]     A copy of the Superintendent's Approval Letter, which is a matter of public record, has been available to Plaintiffs since it was issued on February 17, 2009 and has been posted on the MBIA Group's website since March 3, 2009, prior to Plaintiffs bringing this suit.  The Approval Letter is annexed as Exhibit A to the Declaration of Jonathan D. Siegfried dated May 6, 2009 ("Siegfried Decl.").  This Court may consider such a document in connection with Defendants' motion to dismiss for lack of subject matter jurisdiction under Federal

*continued on the following page…*

makes clear: that the Superintendent and the Department carefully analyzed each Transaction

now challenged by Plaintiffs under very specific, detailed and interrelated statutory provisions of

New York Insurance Law.  After completing that review, the Superintendent determined that the

Transactions complied in all respects with New York law.  He specifically found that the

Transactions (1) did not, as Plaintiffs allege, render MBIA Insurance insolvent, (2) were "fair

and equitable" as to their terms, and (3) did not "adversely affect the interests of policyholders."

(*See* Siegfried Decl., Exh. A p.9).  As detailed in the Approval Letter, the Superintendent

reached these determinations based upon the Department's own extensive and independent

investigation and analysis of the Transactions, including an examination of the books and records

of MBIA Insurance, the Department's assessment of the financial condition of MBIA Insurance,

both prior to and after the Transformation, and the Department's "expertise and knowledge about

insurance companies, the business of insurance and reinsurance and the market for reinsurance."

(*Id*. p.7).

       The Transactions approved by the Superintendent allowed the MBIA Group to

implement a transformation of their business (the "Transformation") following which MBIA

Illinois would maintain and write financial guaranty insurance solely for domestic public finance

bonds, and MBIA Insurance would maintain and write financial guaranty insurance for

structured finance and international products, each with adequate capital and surplus to support

the obligations insured.  Pursuant to the Transactions, MBIA Illinois assumed and reinsured over

---

*…continued from the preceding page*

Rule of Civil Procedure 12(b)(1), as well as for failure to state a claim under Rule 12(b)(6), notwithstanding Plaintiffs' failure to attach it to the Complaint.  *See Filetech S.A. v. Fr. Telecom S.A.*, 157 F.3d 922, 932 (2d Cir. 1998); *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991); *Muller-Paisner v. TIAA*, 446 F. Supp. 2d 221, 226-27 (S.D.N.Y. 2006), *rev'd in part on other grounds*, 289 Fed. Appx. 461 (2d Cir. 2008); *In re MetLife Demutualization Litig.*, 156 F. Supp. 2d 254, 259 n.1 (E.D.N.Y. 2001).

$537 billion of bonds previously insured by MBIA Insurance, reducing the exposure of MBIA

Insurance to $241 billion of insurance previously written. (Siegfried Decl., Exh. B).[2]

        Rather than directly challenge these determinations of the Superintendent under

the judicial scheme erected by New York for such purpose – namely, a special proceeding in

New York State Court under Article 78 of the New York Civil Practice Law and Rules

(McKinney 2009) ("CPLR") naming the Superintendent as defendant – Plaintiffs have, instead,

brought suit in this Court against the MBIA Group to unwind and set aside the Transactions.

Notwithstanding this attempted end run, the fact remains that this suit challenges the

Superintendent's approval of Transactions falling directly within his supervisory and regulatory

authority. As such, the Complaint must be dismissed for at least three independent reasons:

        First, under New York law, the exclusive means for Plaintiffs to challenge the

Transactions approved by the Superintendent is through an Article 78 proceeding. *See* N.Y. Ins.

Law (McKinney 2006) ("Insurance Law") § 326. Plaintiffs may not bring a back door collateral

attack on his determination by cloaking their claims as a private right of action against the MBIA

Group and suing in Federal District Court. In asking this Court to declare the Transactions "null

and void" and to "set them aside," Plaintiffs necessarily challenge the very determinations made

by the Superintendent in order to approve the Transactions, namely their effect on the solvency

of MBIA Insurance, the fairness of their terms, and the interests of policyholders. Courts have

not hesitated to dismiss suits, such as this, which seek to "disregard and bypass the

Superintendent's position, and bring an action directly against the insurer on the very issues

necessarily encompassed in that decision." *Shah v. Metro. Life Ins. Co.*, No. 00 Civ. 108887,

---

[2]    The Court may take judicial notice of the press release issued by the Department on February 18, 2009, attached as Exhibit B to the Siegfried Declaration, announcing its approval of the Transactions. *See McLoughlin v. People's United Bank, Inc.*, 586 F. Supp. 2d 70, 73 (D. Conn. 2008).

2003 WL 728869, at *10-11 (N.Y. Sup. Ct. Feb. 21, 2003), *rev'd in part on other grounds*, *Fiala v. Metro. Life Ins. Co.*, 776 N.Y.S.2d 29 (1st Dept. 2004). To permit such suits would allow Plaintiffs to violate the statutory language of the Insurance Law and the overall legislative scheme established by the New York State Legislature. Accordingly, the Complaint should be dismissed as an improper collateral attack on the decision of the Superintendent acting pursuant to his regulatory authority.

Second, the Complaint should be dismissed, and the Court should decline jurisdiction, under the abstention doctrine of *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). As the Second Circuit has held in cases similarly challenging determinations made by the Superintendent, New York State has a "complex administrative and judicial system for regulating … insurance companies" which was "adopted pursuant to congressional authorization" and "operates pursuant to an express federal policy of noninterference in insurance matters." *Levy v Lewis*, 635 F.2d. 960, 963 (2d Cir. 1980). Accordingly, "federal courts [should] refrain from interfering in cases presenting state law issues relating to complex state [insurance] regulations … and for which [New York] state has provided a comprehensive regulatory system with channels for review by state courts." *Stephens v. Cooper*, 746 F. Supp. 292, 295 (E.D.N.Y. 1990) (citation omitted). That is clearly the case here. The Transactions were approved by the Superintendent, under a complex regulatory scheme, and Plaintiffs' state law claims are, by statute, expressly subject to judicial review by the New York State courts.

Finally, Counts I and II of the Complaint should be dismissed under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), as well as Federal Rule of Civil Procedure 9(b), since those Counts rest on conclusory allegations unsupported by plausible facts. Count III also fails to state a valid cause of action under New York law.

Accordingly, for the foregoing reasons, and for the reasons set forth below, this action should be dismissed.

## STATEMENT OF FACTS

### A.    The Parties

The five named Plaintiffs are hedge funds who purport to bring this action on behalf of all holders of securities and instruments (other than United States municipal and government bonds) for which Defendant MBIA Insurance issued financial guarantee insurance. Plaintiffs do not allege that they are policyholders themselves. (Complaint ("Compl.") ¶1).[3]

The MBIA Group operates insurance businesses through MBIA Insurance and MBIA Illinois. (*Id.* ¶¶19, 20). MBIA Insurance is a New York domiciled insurance company subject to New York insurance law and regulation. (*Id.* ¶19). MBIA Illinois is an Illinois domiciled insurance company. (*Id.* ¶20). MBIA Inc. is a publicly traded company and the ultimate parent company of MBIA Insurance and MBIA Illinois. (*Id.* ¶18).

### B.    Transformation

MBIA Insurance is a monoline insurer that issues only financial guaranty insurance, not other types of insurance such as property, casualty, life, health or disability insurance. Prior to the Transformation of the MBIA Group, MBIA Insurance offered guarantees of payment for, among other things, both public finance bonds (such as municipal and state bonds) and structured finance products (such as collateralized debt obligations and mortgage backed securities). (*Id.* ¶19).

The crisis in U.S. financial markets that became apparent in the late summer of 2007 adversely affected numerous financial institutions. Most companies in the financial

---

[3]    A copy of the Complaint dated March 11, 2009 is attached as Exhibit C to the Siegfried Declaration.

guarantee industry – including MBIA Insurance – were downgraded by both Standard & Poor's and Moody's and suspended writing new structured finance business by mid-2008. (*See, e.g.*, *id.* ¶34). The ratings downgrades also made it impossible for MBIA Insurance to write new business in the municipal and other U.S. public finance markets, and MBIA Insurance had minimal prospect of re-entering that market in the future. (*See id.* ¶35). This abrupt withdrawal of insurance capacity had the effect of "freezing out" many municipal and state issuers from the public finance market and caused the Superintendent and the Department to undertake actions they believed were necessary to stabilize and revitalize the financial guarantee industry. (Siegfried Decl., Exh. B). The purpose of the Transformation -- which was discussed with the Department throughout 2008 -- was, therefore, simple: to establish MBIA Illinois as a separate insurance company that only insures domestic public finance obligations. As such, it could help provide lower-cost funds to public issuers and thus facilitate the "unfreezing" of the U.S. public finance and infrastructure markets. At the same time, the Transformation would preserve MBIA Insurance as a well-capitalized, solvent insurer. (*Id.*) As the Superintendent stated:

> This is a private sector solution to a public sector concern. It preserves MBIA's promises to policyholders, while reducing costs and increasing opportunities for taxpayers. It will aid the federal stimulus efforts by providing access to the credit markets to fund shovel-ready infrastructure development, and it will help taxpayers by lowering the cost of that borrowing. At a time when the demands on the public purse have never been heavier, this plan accomplishes these goals solely with private capital.

(Seigfried Decl., Exh. B).[4]

---

[4] Far from leaving MBIA Insurance a "looted company … without the ability to pay" its policyholder claims, Compl. ¶20, the Superintendent and Department found, as more fully described *infra*, that following the Transformation, MBIA Insurance would have sufficient surplus to pay all of its existing obligations to the policyholders and others. (Siegfried Decl., Exhs. A p.6; B).

**C.**      <u>**The Approval of the New York State Department of Insurance**</u>

         After almost a year of consultations with the Superintendent and the Department, on December 5, 2008, the MBIA Group submitted a detailed application to the Department seeking its approval of the Transactions necessary to implement the Transformation. Pursuant to Insurance Law § 201, the Department is responsible for supervising and regulating all insurance business in New York State, and the Superintendent possesses "the rights, powers, and duties, in connection with the business of insurance in this state, expressed or reasonably implied by [the Insurance Law] or any other applicable law of this state." Accordingly, under § 201 and the statutory provisions of the Insurance Law set forth below, the Superintendent was required to approve the Transactions at issue here before they could be implemented.

         Following the MBIA Group's submission of its application, the Department, over the next two (2) months, continued to conduct an extensive review of the application and an independent investigation of the MBIA Group, including an examination of each of their books and records and reserving methodologies. Only after this review and investigation was completed did the Superintendent issue specific written findings and determinations, in a letter dated February 17, 2009, approving the Transactions. (Siegfried Decl., Exh. A). Thereafter, the Transactions were undertaken, and the Transformation implemented, according to the explicit authorization given to the MBIA Group by the Superintendent in the Approval Letter. In approving the Transactions, the Superintendent and the Department made the following determinations directly relevant to this motion and warranting dismissal of this lawsuit:

         a.      <u>The MBIA Insurance Dividend</u>

         The Superintendent approved the distribution of a dividend of approximately $1.147 billion in cash and securities from MBIA Insurance to MBIA Inc. As set forth below, this Transaction is now challenged by Plaintiffs. (Compl. ¶45). The Superintendent analyzed

this transaction under the statutory requirements of Insurance Law § 4105(a), and issued his approval after finding (as required by the Insurance Law) that "MBIA [Insurance] will retain sufficient surplus to support its obligations and writings following the payment of the MBIA [Insurance] Dividend."  The Superintendent reached this determination based upon the Department's independent analysis of, among other things, "the MBIA Entities' financial condition prior to the Transformation, and … after the effectuation of the Transformation." (Siegfried Decl., Exh. A p.6).

           b.      The Stock Redemption

The Superintendent approved the redemption by MBIA Insurance of 32,064 shares of its capital stock from MBIA Inc. in exchange for approximately $938 million in cash and securities and the outstanding shares of MBIA Illinois owned by MBIA Insurance.  As set forth below, these Transactions are also challenged in the Complaint.  (Compl. ¶40).  The Superintendent analyzed these transactions under the statutory requirements of Insurance Law § 1411(d), and issued his approval after expressly finding (as required by the Insurance Law) that they were "reasonable and equitable."  The determination was based on, among other things, "the Department's examination of the MBIA Entities' financial condition prior to the Transformation, and … after the effectuation of the Transformation."  (Siegfried Decl., Exh. A p.6).

           c.      The Reinsurance Agreement

The Superintendent approved the terms of the reinsurance agreement (the "Reinsurance Agreement") also now challenged by Plaintiffs, pursuant to which MBIA Illinois assumed and reinsured $537 billion in bonds previously insured by MBIA Insurance.  (*See* Compl. ¶41).  The Superintendent analyzed this Transaction under the statutory requirements of Insurance Law §§ 1308, 1505(a) and (d), and 6906 and issued his approval based upon the following:

- The Department's independent "examination of the MBIA Entities' financial condition prior to … [and] after the consummation of the Reinsurance Transaction."

- The Department's "expertise and knowledge about insurance companies, the business of insurance and reinsurance, and the market for reinsurance."

- The Department's determination that the terms of the Transaction are "fair and equitable," that the "[c]harges for fees and services performed [are] 'reasonable'," that "[e]xpenses incurred and payment received [are] allocated to [MBIA Insurance] on an equitable basis," and that the Transaction would not "adversely affect the interests of policyholders," such as Plaintiffs purport to represent here.

(Siegfried Decl., Exh. A p.7).

The Department further found that "the Reinsurance Agreement incorporates by reference all New York statutes and Department regulations necessary for MBIA [Insurance] to realize full credit for the reinsurance being provided," and that MBIA Insurance "will receive full financial credit, including the ability to release all unearned premiums, contingency and other reserves applicable to the policies ceded pursuant to the MBIA Reinsurance Agreement." (*Id.* p.8). Thus, MBIA Insurance was relieved of over $537 billion of liabilities, which were assumed and reinsured by MBIA Illinois. (Siegfried Decl., Exh. B).

**D.    The Allegations of the Complaint**

Plaintiffs allege that the Transactions approved by the Superintendent were either actual or constructive "fraudulent transfers" that violated §§ 273 through 276 of the New York Debtor and Creditor Law. (Compl. ¶¶71-85). With much hyperbole and no facts, Plaintiffs claim that the Transactions were made while MBIA Insurance was insolvent or that they rendered MBIA Insurance insolvent, leaving MBIA Insurance unable to pay its obligations as they become due.

9

In making these allegations, Plaintiffs do not – because they cannot – cite to a single financial obligation that MBIA Insurance has failed to meet, either before or after the Transactions, much less a failure to pay principal or interest under any of the financial guarantee policies it has issued.

It is also beyond peradventure that whether MBIA Insurance would be solvent – and able to meet its obligations after the Transactions were consummated – was the key issue decided by the Superintendent and the Department.  As set forth *supra*, the Superintendent gave his approval only after the Department conducted an independent examination of the financial condition of MBIA Insurance, and only after concluding that MBIA Insurance would remain fully solvent and able to meet its obligations.  As the Superintendent stated:

> Both MBIA [Insurance] and [MBIA Illinois] will continue to pay all valid claims in a timely fashion, and both entities will have sufficient resources to meet policyholder claims as they come due.  Consistent with New York State Insurance Law, the New York State Insurance Department only approved the transaction after deciding that both companies would have sufficient statutory capital to meet the letter and spirit of the Insurance Law.  The review and study process lasted approximately one year.

(Siegfried Decl., Exh. B).[5]

In asking this Court to set aside the Transactions under the New York Debtor and Creditor Law, Plaintiffs are either asking this Court to overrule these determinations of the Superintendent in a proceeding to which the Superintendent is not a party or to ignore the Superintendent's determination entirely and make its own parallel determination under New York law.  The Court should reject Plaintiffs' invitation to do so and dismiss the Complaint, as

---

[5]   Under Insurance Law § 1309(a), the Superintendent is charged with determining whether an insurance company is or will be insolvent and proceeding against any insurance company under Article 74 of the Insurance Law if he has any insolvency concerns.

more fully discussed below, under the collateral attack doctrine or under *Burford* abstention principles.

Plaintiffs further allege that the Transactions violate the implied covenant of good faith and fair dealing in the policies insuring the securities they purport to own, because, according to Plaintiffs, subsequent to the Transactions the credit ratings for the underlying securities which they purport to own were downgraded. (*Id*. ¶81-85). Plaintiffs, however, do not attach the MBIA Insurance policies to the Complaint – and for good reason. As set forth below and in Exhibit D to the Siegfried Declaration, the standard policy issued by MBIA Insurance guarantees one thing and one thing only: the timely payment of principal and interest on the insured instruments.[6] It contains no guaranty, express or implied, of a particular credit rating for those instruments.[7] Thus, the Superintendent's determination that MBIA Insurance continues to have sufficient surplus to meet all of its obligations under the policies it issues, as well as his determination that the Transactions do not "adversely affect the interests of policyholders," necessarily encompasses the issues raised in Plaintiffs' breach of contract claim and can only properly be challenged in an Article 78 proceeding. Moreover, as discussed in Point III *infra*, the law is clear that courts will not rewrite or interpret an agreement between sophisticated parties, such as the parties here, to implicitly impose an obligation the parties did not include.

---

[6]   The Court may consider the policy on this motion since it is incorporated by reference in the Complaint. *See San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.,* 75 F.3d 801, 808-09 (2d Cir. 1996); *Caldwell Trucking PRP Group v. Spaulding Composites Co.*, 890 F. Supp. 1247, 1252 (D.N.J. 1995).

[7]   Nor could MBIA Insurance guarantee or promise any particular ratings, since the ratings are established by independent third-party rating companies. In fact, Plaintiffs themselves concede that MBIA Insurance's credit rating was downgraded by the rating agencies in early 2008, almost a year before the Transactions they now challenge. (Compl. ¶34). Furthermore, the ratings issued by the rating agencies subsequent to the Transformation reflect their own independent determination that MBIA Insurance is solvent.

Accordingly, this Court should dismiss the Complaint (a) as an improper collateral attack on the determinations of the Superintendent, (b) under well-established principles of abstention, and (c) for failure to properly plead and state a claim under both the Federal Rules of Civil Procedure and New York State law.

## ARGUMENT

## I.

### THE COMPLAINT SHOULD BE DISMISSED AS AN IMPROPER COLLATERAL ATTACK ON THE DECISION OF THE NEW YORK SUPERINTENDENT OF INSURANCE

Notwithstanding the labels attached to their causes of action, Plaintiffs cannot dispute that this lawsuit, as set forth above, challenges decisions made by the Superintendent on issues falling directly within his supervisory or regulatory authority pursuant to §§ 201, 1308, 1411(d), 1505(a) and (d), 4105(a) and 6906 of the Insurance Law.  In their Prayer for Relief, Plaintiffs specifically request that this Court annul the decisions of the Superintendent and the Department by declaring the MBIA Insurance Dividend, the Stock Redemption, the transfer of MBIA Illinois stock to MBIA Inc., and the Reinsurance Transaction "null and void" and "setting them aside."

The Complaint, as such, is an impermissible collateral attack on the decisions of the Superintendent and must be dismissed.  *Fiala v. Metro. Life Ins. Co.*, 776 N.Y.S.2d 29, 31, 6 A.D.3d 320, 322 (1st Dept. 2004) (upholding dismissal of claims against insurer for breach of contract, breach of fiduciary duty and fraud as "collateral attacks on the Superintendent's approval" of the insurer's demutualization plan); *Shah v. Metro. Life Ins. Co.*, 2003 WL 728869, at *10-11 (N.Y. Sup. Ct. Feb. 21, 2003) ("claim … directed at the very issues … considered and addressed by the Superintendent in his review and approval of the Plan … constitutes a collateral attack on that decision"); *Academic Health Prof'ls Ins. Ass'n. v. MQ of New York, Inc.*, No. 01

12

Civ. 605452, 2003 WL 25668211 (N.Y. Sup. Ct. Apr. 14, 2003) ("arguments are not considered

here because they are an impermissible collateral attack on the Superintendent's decision"); *In re*

*Empire Blue Cross & Blue Shield Customer Litig.*, 622 N.Y.S.2d 843, 846-47 (N.Y. Sup. Ct.

1994).

> As the Court held in *Shah*, 2003 WL 728869, at *12:

> [P]laintiffs have indicated nothing in either the statute, or its legislative
> history, from which a private right of action, asserted directly against [the
> insurer], could be maintained on those very issues which fall directly
> within the supervisory or regulatory authority of the Superintendent.  To
> the extent that plaintiffs feel that the Superintendent's determination of
> these issues was improper, they are authorized to bring an Article 78
> proceeding to challenge such determination.  Permitting plaintiffs to
> simply disregard and bypass the Superintendent's decision, and bring an
> action directly against [the insurer] on the very issues necessarily
> encompassed in that decision, would not be consistent with the overall
> legislative scheme.

> Indeed, to hold otherwise and permit this action to proceed against an insurer who

relied in good faith on the approvals of the Superintendent and the Department would undermine

both the authority of the Superintendent and the legislative scheme for regulation of insurance

companies in New York.

> The fact that Plaintiffs have brought their claims as violations of the Debtor and

Creditor Law and under common law is legally irrelevant.  As the court held in *Shah*, "Even

though couched in terms of breach of fiduciary duty or fraud, a claim which seeks, indirectly, to

challenge the sufficiency of a Plan which was approved by the Superintendent, constitutes a

collateral attack on that approval, and must be made in an Article 78 proceeding." *Id.* at *13.

Here, the critical issues upon which Plaintiffs' claims rest – *i.e.*,  whether the Transactions

rendered MBIA Insurance insolvent and whether they adversely affected the interests of

policyholders – were all considered and squarely addressed by the Superintendent in his decision

and approval.  Accordingly, since Plaintiffs' claims collaterally attack the Superintendent's

Approval, they must be made in an Article 78 proceeding to which the Superintendent is a party.[8]

        This legal principle, mandating dismissal of claims that are collateral attacks on

decisions of state regulators, is firmly established under New York law and is not limited in its

application to the area of insurance law.  *See, e.g., Brawer v. Johnson*, 647 N.Y.S.2d 553, 554,

231 A.D.2d 664 (2d Dept. 1996) (claims of fraud, misrepresentation and breach of fiduciary duty

"[i]n essence … constituted a collateral attack on" conversion plan approved by New York State

Superintendent of Banks which could only be brought as an Article 78 proceeding); *In re East*

*New York Sav. Bank Depositors Litig.*, 547 N.Y.S.2d 497, 499 (N.Y. Sup. Ct. 1989) *State v.*

*Khan*, 615 N.Y.S.2d 771, 772, 206 A.D.2d 732, 733 (3d Dept. 1994); *Ass'n for Cmty. Reform*

*Now v. Bloomberg*, 824 N.Y.S.2d 752, 2006 WL 2686520, at *18 (N.Y. Sup. Ct. Sept. 19, 2006);

*Steen v. Quaker State Corp.*, 785 N.Y.S.2d 551, 552, 12 A.D.3d 989, 990 (3d Dept. 2004).

        These cases also clearly hold that Plaintiffs' *exclusive* remedy is an Article 78

proceeding in New York State Court naming the Superintendent, not a back door plenary action

against the insurer.  The New York State Legislature has expressly provided that any person

aggrieved by a decision of the Superintendent has the right to challenge that decision, whether or

not they were a party to that determination, or had prior notice of it.  Insurance Law § 326.

("Notwithstanding the specific enumerations of the right to judicial review in this chapter, any

---

[8]    The case of *Marine Midland Bank v. Home Insurance Co.*, 693 N.Y.S.2d 550, 551, 263 A.D.2d 374, 374 (1st Dept. 1999), cited by Plaintiffs at the Preliminary Conference held by this Court on May 1, 2009, does not change this result.  In *Marine Midland*, the Appellate Division allowed a creditor's claim against an insurer to proceed only after finding that "the issues in the instant action [are not] the same as those that were before the sister State administrative body, which was not bound to consider the interests of creditors.  Thus, there is no potential for conflict or for subversion of the sister State Order."  *Id.*  Here, by contrast and as set forth above, the issues before the Court are the very issues considered by the Superintendent, who was also required by the Insurance Law to consider the interests of policyholders in connection with the Approval.

order, regulation or decision of the superintendent is declared to be subject to judicial review in a proceeding under article seventy-eight of the civil practice law and rules.").

In directing that challenges to the Superintendent's decisions be brought in an Article 78 proceeding, Section 326 makes no distinction between decisions that are issued by the Superintendent pursuant to provisions of the Insurance Law requiring notice and hearing (*see*, *e.g.*, *Shah*, 2003 WL 728869, at *2; *Consumers Union of U.S., Inc. v. New York*, 840 N.E.2d 68, 74 (N.Y. 2005)), and those that are issued without notice and hearing (*see*, *e.g.*, *Prior v. Board of Trustees of New York Fire Department Pension Fund*, 800 N.Y.S.2d 355 (N.Y. Sup. Ct. 2004); *State Farm Mutual Automobile Insurance Co. v. Levin*, 702 N.Y.S.2d 694, 697, 263 A.D.2d 233, 237-38 (3d Dept. 2000)). Under New York's statutory scheme, the only relevance to whether a party had notice and an opportunity to be heard prior to the issuance of a decision by the Superintendent is whether the challenge will be decided under the legal standard set forth in CPLR § 7803(3) (when there has been no notice and hearing) or § 7803(4) (where there has), and whether the case will be heard at the trial level of the New York State Supreme Court or at a term of the Appellate Division. *See* CPLR § 7804(g).

Indeed, Plaintiffs' attempt at the Preliminary Conference to argue that the collateral attack doctrine should be limited to cases where the Superintendent issued his decision after public notice and hearing is undercut by the very case they cite for this proposition, *Shah*. In *Shah*, plaintiffs challenged certain aspects of a plan where the Superintendent's approval followed a vote by policyholders on the plan and notice and hearing by the Superintendent. *Shah*, 2003 WL 728869, at *4. However, the *Shah* plaintiffs also challenged an amendment to the plan which was approved by the Superintendent *subsequent* to the policyholder vote and *without any notice or hearing* to plaintiffs by the Superintendent. *Id.* at *6. The Court dismissed

this claim as well as a collateral attack on the decision of the Superintendent that could only be brought as an Article 78 proceeding. *Id.* at \*12-13.

Accordingly, Plaintiffs' collateral attack on these determinations of the Superintendent, and their request that this Court set aside the Transactions e approved, should be dismissed.

## II.

### UNDER *BURFORD v. SUN OIL,* THE COURT SHOULD ABSTAIN IN FAVOR OF STATE COURT REVIEW OF THE NEW YORK STATE INSURANCE DEPARTMENT'S ADMINISTRATIVE DETERMINATIONS AND DISMISS THE COMPLAINT

The Court should also abstain from exercising its jurisdiction in this case under the well-established abstention doctrine of *Burford* and its progeny. *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943); *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996); *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25 (1959). As the Supreme Court has held, a federal court should decline to interfere with the proceedings or orders of state administrative agencies where (1) there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar," or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *New Orleans Public Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361 (1989) ("*NOPSI*") (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976)). That is precisely what Plaintiffs ask this Court to do. They request that this Court set aside and unwind the Transactions approved by the Superintendent after careful review and an independent analysis by the Department in accordance with New York's regulatory scheme as embodied in its Insurance Law. *See, e.g,.* Insurance Law §§ 201, 301, *et seq.*; *Mass. Mut. Life Ins. Co. v.*

*Thacher*, 222 N.Y.S.2d 339, 344, 15 A.D.2d 242, 247 (1st Dept. 1961), *aff'd*, 183 N.E.2d 79

(N.Y. 1962); *Med. Soc'y of State v. Serio*, 800 N.E.2d 728, 733 (N.Y. 2003) ("Responsibility for

administering the Insurance Law rests with the Superintendent of Insurance … who has broad

power to interpret, clarify and implement the legislative policy").[9]

In *Levy*, 635 F.2d. at 963, the Second Circuit held, in language relevant here, that

*Burford* abstention applies to decisions of the Superintendent. As the Court stated:

> New York State has a complex administrative and judicial system for
> regulating … domestic insurance companies. … It is also highly
> significant that the state scheme has been adopted pursuant to
> congressional authorization.  In the McCarran-Ferguson Act … Congress
> mandated that regulation of the insurance industry be left to the individual
> states. Thus the administrative and judicial scheme erected by New York
> to regulate insurance companies … operates pursuant to an express federal
> policy of noninterference in insurance matters.

*See also Law Enforcement Ins. Co. v. Corcoran*, 807 F.2d 38, 43-44 (2d Cir. 1986); *Corcoran v.

Ardra Ins. Co.*, 842 F.2d 31, 37 (2d Cir. 1988).

According to the Court of Appeals, in deciding a motion to abstain, the Court

should determine whether an adequate state law remedy exists and then weigh three key factors,

all of which heavily favor abstention here:  (1) the "degree of specificity of the state regulatory

scheme"; (2) the "necessity of a discretionary interpretation" of the state statute; and (3) "whether

the subject matter of the litigation is traditionally one of state concern."  *Bethpage Lutheran Serv.*

---

[9]    Although Plaintiffs also purport to seek damages for the alleged fraudulent conveyances (Prayer for Relief ¶D),
Plaintiffs fundamentally seek equitable relief – declarations that the Transactions and the Superintendent's
determinations approving them are "null and void," and that they be "set aside." (*Id.* ¶¶B and C).  Abstention is
thus squarely appropriate.  *See Quackenbush*, 517 U.S. at 719-721, 730 (1996) ("We have not strictly limited
abstention to 'equitable cases' … but rather have extended the doctrine to all cases in which a federal court is
asked to provide some form of discretionary relief.") (citing, *e.g.*, *Thibodaux*, 360 U.S. 25).  Indeed, abstention
may be appropriate even in cases involving only money damages.  *Easter v. Am. W. Fin.*, 202 F. Supp. 2d 1150,
1155 (W.D. Wash. 2002) ("it is now well-established that [abstention doctrines, including *Burford*] apply to
actions at law").  Additionally, to the extent Plaintiffs' suit is one for declaratory relief, this Court possesses
additional discretion to abstain.  *See Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942); *Wilton v. Seven Falls
Co.*, 515 U.S. 277 (1995).

*Inc. v. Weicker*, 965 F.2d 1239, 1243 (2d Cir. 1992) (citing *Hanlin Group, Inc. v. Power Auth. of New York*, 703 F. Supp. 305, 308 (S.D.N.Y. 1989)).  In this case, an adequate state remedy clearly exists since Plaintiffs may (and must) challenge the Transactions in an Article 78 proceeding in New York State court.  Furthermore, each of the three key factors to be considered by the Court supports abstention: (1) New York has a complex, detailed insurance regulatory scheme, pursuant to which the challenged Transactions were approved; (2) under that scheme, the Superintendent, utilizing the Department's specialized expertise, made discretionary determinations interpreting the Insurance Law; and (3) the Superintendent made those determinations in furtherance of insurance regulatory policy, an area that is unquestionably and traditionally one of state concern.[10]

**A.     Adequate State Court Review Is Available In an Article 78 Proceeding**

As the Second Circuit has held, Plaintiffs have an adequate state law remedy to challenge decisions of the Superintendent – in this case the Approval of the Transactions – through an Article 78 proceeding in New York State court.  *See* Insurance Law § 326; *Levy*, 635 F.2d at 963; *see also Stephens*, 746 F. Supp. at 296; *Hanlin*, 703 F. Supp. at 308; *Law Enforcement Ins. Co.*, 807 F.2d at 43 n.8.

**B.     New York Has a Complex, Extensive Insurance Regulatory Scheme**

As the court observed in *Hanlin*, "[f]oremost among the factors considered is the presence of a sophisticated and extensive state regulatory scheme involving a complicated area of special state concern."  *Hanlin*, 703 F. Supp. at 308.  It is well-settled that "New York has set

---

[10]     Just as notice and the availability of a hearing are irrelevant to the "collateral attack" analysis, *see* Section I, *supra*, so too are they irrelevant to *Burford* abstention analysis.  *See Sun Oil Co. v. Burford*, 130 F.2d 10, 15 (5th Cir. 1942) (noting that "[w]hether the Commission heard evidence or not is immaterial; it is not required to take testimony or make findings of fact before promulgating its orders"), *rev'd on other grounds*, 319 U.S. 315, 334 (1943).

up a comprehensive plan of regulation of insurance companies," and courts have considered all aspects of insurance regulation to fall within its complexity. *Law Enforcement Ins. Co.*, 807 F.2d at 43; *see also Levy*, 635 F.2d at 963*; Alliance of Am. Insurers v. Cuomo*, 854 F.2d 591, 600 (2d Cir. 1988); *Serio v. Black, Davis & Shue Agency, Inc.*, No. 97 Civ. 4914, 2005 WL 2560390, at *3 (S.D.N.Y. Oct. 11, 2005); *Stephens*, 746 F. Supp. at 294-95.

To approve the Transactions, the Superintendent was required to determine that they complied with New York's complex regulatory scheme. As set forth in the Approval Letter, the Superintendent and the Department reviewed the Transactions and issued determinations under no less than seven (7) different Articles and Sections of the Insurance Law, including Sections 1308, 1411, 4105, 6904, 6906 and Articles 15 and 71, which, in turn, cross-reference and require consideration of other Sections and Articles of the Insurance Law. (Siegfried Decl., Exh. A).

Accordingly, application of this factor dictates in favor of *Burford* abstention.

## C.    The Superintendent Must Make Discretionary Interpretations of New York Insurance Laws

The Superintendent was required to make discretionary determinations under the Insurance Law as part of the Approval including, *inter alia*, (a) what constituted "*sufficient surplus* to support [the insurer's] obligations and writings" (Insurance Law § 4105(a) (emphasis added)); (b) whether the "plan of stock redemption and retirement … [was] *reasonable and equitable*" (Insurance Law § 1411(d) (emphasis added)); (c) whether the reinsurance agreement would "adversely affect the *interests of policyholders*," and had terms that were "*fair and equitable*" (Insurance Law § 1505(a)-(e) (emphases added)); and (d) whether, in the aggregate, the series of actions in the Transformation constituted a "transfer of *all or substantially all* of the assets "of MBIA Insurance. (Insurance Law §§ 7101(g), 7105(a) (emphasis added)). *See*

*Bethpage*, 965 F.2d at 1243-44 (where "reasonable persons can disagree as to what constitutes reasonable payments," the "statutory framework … necessarily invokes the expertise and best judgment of the Commissioner"); *see also Travelers Ins. Co. v. Home Ins. Co.*, 1999 U.S. Dist. LEXIS 5523, at *4-6 & n.3 (C.D. Cal. Feb. 22, 1999) (abstaining under *Burford* where state Insurance Department found plan was "fair and reasonable to policyholders," provided "adequate policyholder protection," and was "in the best interest of policyholders and the public").  These determinations were based, among other things, on the Department's "expertise and knowledge about insurance companies, the business of insurance and reinsurance, and the market for reinsurance."  (Siegfried Decl., Exh. A p.7).

Accordingly, resolution of this factor, as well, warrants abstention.

**D.    Insurance Regulation Is Traditionally a State Concern**

Finally, it is well established that the regulation of insurance is an area of exclusive and overriding state concern.  Congress enacted the McCarran-Ferguson Act, 15 U.S.C. § 1101, *et seq.*, for the specific purpose of consigning to the states broad and primary responsibility for regulating the insurance industry.  *See SEC v. Nat'l Sec., Inc.*, 393 U.S. 453, 458 (1969); *Levy*, 635 F.2d at 963 ("The administrative and judicial scheme erected by New York to regulate insurance companies … operates pursuant to an express federal policy of noninterference in insurance matters."); *see also Law Enforcement Ins. Co.*, 807 F.2d at 44 (the McCarran-Ferguson Act embodies the "express federal policy of noninterference in insurance matters"); *Am. Centennial Ins. Co. v. Armco, Inc.*, 746 F. Supp. 350, 355-56 (S.D.N.Y. 1990) (recounting the history of state primacy in insurance regulation, culminating in the McCarran-Ferguson Act).  Furthermore, as set forth *supra*, the Superintendent made clear that in approving the Transactions, New York State had a strong public interest "as part of the stimulus plan" to unfreeze the municipal bond market so that municipalities could "increase spending for

infrastructure projects" such as "building bridges or schools, housing or hospitals." (Siegfried Decl., Exh. B).

There are, by contrast, no federal claims asserted in this case. *See Lac D'Amiante Du Quebec, Ltee v. Am. Home Assur. Co.*, 864 F.2d 1033, 1044 (3d Cir. 1988) ("federal courts more readily abstain from a case that contains no issue of federal law") (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 (1983)); *see also Law Enforcement Ins. Co.*, 807 F.2d at 43; *Am. Centennial*, 746 F. Supp. at 356.

Accordingly, since all three factors strongly weigh in favor of abstention, *Burford* and its progeny mandate abstention here.

## III.

### THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6)

All three counts of the Complaint should also be dismissed for failure to properly plead and state a valid cause of action.

### A.    Counts I and II for Fraudulent Conveyance and Constructive Fraudulent Conveyance Fail to State a Claim

In *Bell Atlantic Corp. v. Twombly*, the Supreme Court held that to withstand a motion to dismiss, the "[f]actual allegations" contained in the complaint "must be enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). The facts alleged must be "plausible" not merely "conceivable." *Id*. at 570. Plaintiffs must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal citations omitted); *see also Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008); *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007); *ATSI Commc'ns. Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Concepcion v. City of New York*, No. 05 Civ. 8501, 2008 WL 2020363, at *2 (S.D.N.Y. May 7, 2008).

Here, however, a "formulaic recitation of the elements of a cause of action" is all that Plaintiffs offer. Counts I and II consist of nothing more than conclusory allegations parroting the legal standards set forth in §§ 273, 274 and 276 of New York's Debtor and Creditor Law.

Noticeably absent from the Complaint are "plausible" facts to support Plaintiffs' conclusions that the "transfers and the restructuring as a whole were undertaken and designed with the intent to hinder, delay and defraud MBIA Insurance's present and future creditors" (Count I, ¶74), that the Transactions were made "without adequate consideration" (Count I, ¶72; Count II, ¶77), or that the Transactions "were made at a time when MBIA Insurance was insolvent or caused MBIA Insurance to become insolvent."  (Count I, ¶73; Count II, ¶78). Plaintiffs' allegations of fraudulent intent in Count I of the Complaint also fail to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  *See e.g.*, *In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005) ("As 'actual intent to hinder, delay or defraud' constitutes fraud … it must be pled with specificity, as required by Fed. R. Civ. P. 9(b)").

Substituting pejorative rhetoric for plausible facts, the Complaint is replete with conclusory accusations of "looting," "stripping," "avarice" and "greed."  However, as set forth *supra*, the Superintendent and the Department found, based upon their own independent and extensive examination of the financial statements of MBIA Insurance, that the challenged Transactions were "reasonable and equitable" and that MBIA Insurance, both prior and subsequent to the Transactions, was solvent and able to pay all of its obligations as they became due.  (Siegfried Decl., Exh. A).  *See Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995) (affirming dismissal where "attenuated allegations" supporting plaintiff's claim "are contradicted … by facts of which we may take judicial notice").

These determinations are uniquely within the expertise of the Superintendent who is charged with determining whether an insurance company is solvent and is obligated to take action if they are not.  Insurance Law § 1309(a).[11]  In fact, Plaintiffs do not allege – because they cannot – that MBIA Insurance has defaulted on any of its payment obligations under any of the insurance policies it issued.

Finally, contrary to Plaintiffs' unsupported allegations that the MBIA Group acted with an intent to defraud creditors, the Approval Letter establishes that the MBIA Group responsibly presented the Transactions to the Superintendent and the Department for their thorough and complete independent review, and proceeded with the Transactions only after receiving written approval from the Superintendent, all in accordance with New York Law.

In short, Counts I and II consist of conclusory allegations and unfounded speculation, not "plausible facts," which are expressly refuted by the determinations of the Superintendent and the Department.  As such, these counts should be dismissed pursuant to the Supreme Court holding in *Twombly* and the heightened pleading requirements of Rule 9(b).

**B.      Count III for Breach of the Implied Covenant of Good Faith and Fair Dealing Fails to State a Claim**

Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing must also be dismissed because Plaintiffs seek to recover for an obligation that is neither explicitly nor implicitly part of the policies issued by MBIA Insurance.  The only contracts that

---

[11]     Section 1309(a) of the Insurance Law provides:

Whenever the superintendent finds from a financial statement or report on examination that an authorized insurer is unable to pay its outstanding lawful obligations as they mature in the regular course of business, as shown by an excess of required reserves and other liabilities over admitted assets, or by its not having sufficient assets to reinsure all outstanding risks with other solvent authorized assuming insurers after paying all accrued claims owed, such insurer shall be deemed insolvent and the superintendent may proceed against it pursuant to the provisions of article seventy-four of this chapter.

purportedly exist between Plaintiffs and MBIA Insurance, and thus the only contracts that could

give rise to a claim for breach of the implied covenant, are the insurance polices issued by MBIA

Insurance. [12]  These policies (Siegfried Decl., Exh. D), which Plaintiffs do not attach to their

Complaint, provide that MBIA Insurance guarantees the payment of principal and interest on the

instruments they insure, nothing more, and Plaintiffs do not allege that MBIA Insurance has

failed to honor this guarantee.

        Plaintiffs' contention that there is an implied guarantee of a particular credit rating

in the policies is incorrect.  While a guarantee of payment of principal and interest may have the

effect of enhancing the credit of the underlying instrument – since it provides an additional

source of payment – it does not imply a particular credit rating.  If Plaintiffs had wanted the

guarantee of a particular credit rating, they should have negotiated for such a guarantee, or for

default "triggers" in the policy if the credit rating declined after issuance of the policy.  They did

not.  As the New York Court of Appeals has held, courts will not rewrite or interpret an

agreement between sophisticated parties so as to implicitly impose an obligation the parties did

not include.  *See Rowe v. Great Atl. & Pac. Tea Co., Inc.,* 385 N.E.2d 566, 572 (N.Y. 1978); *see*

*also ARI and Co., Inc. v. Regent Int'l Corp.*, 273 F. Supp. 2d 518, 523-24 (S.D.N.Y. 2003)

("[T]he breach of covenant of good faith claim must be dismissed because it seeks to recover for

obligations that were not explicitly part of the Agreement.  New York law is clear that the

implied covenant cannot be used to create independent obligations beyond the contract."); *Wolff*

---

[12]   Although Plaintiffs also refer in the Complaint to some unnamed and unidentified offering materials which were not prepared by MBIA Insurance, these materials are clearly not a contract between MBIA Insurance and Plaintiffs and cannot give rise to a claim under the implied covenant of good faith.  *See Brown v. AXA Re*, No. 02 Civ. 10138, 2004 WL 941959, at *4 (S.D.N.Y. May 3, 2004); *Tang v. Jinro Am., Inc.*, No. 03 Civ. 6477, 2008 WL 4163183, at *3 (E.D.N.Y. Sept. 4, 2008).  Even as to these unnamed and unidentified documents, Plaintiffs contend that the only representation MBIA Insurance "accepted" was the statement that MBIA Insurance would "unconditionally and irrevocably guarantee" timely payments of principal and interest, *i.e.*, no more than what the policies provide.  (Compl. ¶25).

*v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 497 (S.D.N.Y. 2002) ("the obligation of good faith does not create obligations that go beyond those intended and stated in the language of the contract"); *Warner Theatre Assocs. Ltd. v. Metro. Life Ins. Co.*, No. 97 Civ. 4914, 1997 WL 685334, at *6 (S.D.N.Y. Nov. 4, 1997) ("[t]he duty of good faith cannot add to, detract from, or alter the terms of the contract itself"); *Long v. Marubeni Am. Corp.*, No. 05 Civ. 0639, 2006 WL 1716878, at *1 (S.D.N.Y. Jun. 20, 2006) (same); *JPMorgan Chase Bank, N.A. v. IDW Group, LLC*, No. 08 Civ. 9116, 2009 WL 321222, at *8 (S.D.N.Y. Feb. 09, 2009) (same).

Accordingly, Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing – which seeks to impose an obligation that is not a part of the policies – should be dismissed as a matter of law.

## CONCLUSION

For the foregoing reasons, Defendants MBIA Inc., MBIA Insurance, and MBIA Illinois respectfully request that the Complaint be dismissed and that they be awarded their costs and expenses and such other relief as the Court deems appropriate.

Dated:  May 6, 2009

Respectfully Submitted,

DEWEY & LEBOEUF LLP
By: /s/ Jonathan D. Siegfried
Jonathan D. Siegfried
1301 Avenue of the Americas
New York, NY 10019
Telephone: (212) 259-8000
Facsimile:  (212) 424-8500
jsiegfried@dl.com

***Attorneys for Defendants***