UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                                             :
Aurelius Capital Master, Ltd., Aurelius Capital              :
Partners, L.P., Fir Tree Value Master Fund, L.P., Fir        :
Tree Capital Opportunity Master Fund, L.P., and Fir          :
Tree Mortgage Opportunity Master Fund, L.P.,                 :
individually, and on behalf of a class of similarly          :
situated persons pursuant to Fed. R. Civ. P. Rule 23,        :
                                                             :
                                    Plaintiffs,              :       Case No.: 09-CV-2242 (RJS)
                                                             :
                vs.                                          :
                                                             :
MBIA Inc., MBIA Insurance Corporation, and                   :
MBIA Insurance Corporation of Illinois,                      :
                                                             :
                                    Defendants.              :

-------------------------------------------------------------x


## PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

David W. Ichel
Barry R. Ostrager
Patrick T. Shilling
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York  10017-3954
Telephone  212-455-2000

Attorneys for Plaintiffs

## Table of Contents

**Page**

PRELIMINARY STATEMENT ...................................................................... 1

STATEMENT OF FACTS ............................................................................ 3

    A.    The MBIA Insurance Business ................................................. 3

    B.    The Asset-Stripping Transactions ........................................... 3

    C.    Effect Of The Transactions:  MBIA Insurance's Insolvency ................................ 5

    D.    The MBIA Defendants Privately Obtained The Superintendent's Approvals Of Certain Aspects Of The Transactions .............................. 6

    E.    The Claims Asserted in Plaintiffs' Complaint ....................... 7

APPLICABLE STANDARDS ........................................................................ 7

ARGUMENT ................................................................................................ 8

I.    THE SUPERINTENDENT'S APPROVALS DO NOT BAR PLAINTIFFS' CLAIMS ........................................................................................... 8

    A.    Regulatory Approval Does Not Bar Claims Against Private Parties Where There Was No Notice Or Opportunity To Be Heard ............................... 9

    B.    Regulatory Approval Does Not Bar Independent Claims Against Private Parties ....................................................................... 13

II.    *BURFORD* ABSTENTION IS COMPLETELY INAPPROPRIATE IN THIS CASE ................................................................................................. 17

III.    THE COMPLAINT MORE THAN ADEQUATELY STATES CLAIMS FOR FRAUDULENT CONVEYANCE AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING .............................. 20

    A.    The Complaint Alleges Actual Fraudulent Conveyance With Particularity ........ 20

    B.    The Detailed Allegations Of The Complaint Also State A Claim For Constructive Fraudulent Conveyance ................................ 22

    C.    The Complaint Alleges That Defendants Have Intentionally Denied Plaintiffs The Benefits Of Their Contracts And Therefore States A Claim For Breach Of The Implied Covenant Of Good Faith And Dealing .................... 23

CONCLUSION ............................................................................................. 25

## Table of Authorities

### Cases

*Academic Health Prof'ls Ins. Ass'n v. MQ of N.Y., Inc.* No. 605452/01, 2003
WL 25668211 (N.Y. Sup. Ct. Apr. 14, 2003) ...................................... 10

*Ala. Pub. Serv. Comm'n v. S. Ry. Co.*, 341 U.S. 341 (1951) ........................... 17

*Alliance of Am. Insurers v. Cuomo*, 854 F.2d 591 (2d Cir. 1988) ..................... 19

*Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc.*, 361 F. Supp.
2d 283 (S.D.N.Y. 2005) ..................................................................... 24

*Belco Petroleum Corp. v. AIG Oil Rig, Inc.*, 565 N.Y.S.2d 776 (App. Div.
1991).............................................................................................. 17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................... 8

*Bethphage Lutheran Serv., Inc. v. Weicker*, 965 F.2d 1239 (2d Cir. 1992) .............. 18, 19

*Brawer v. Johnson*, 647 N.Y.S.2d 553 (App. Div. 1996) ................................. 10

*Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) ............................................... 17

*Care Envtl. Corp. v. M2 Techs., Inc.,* No. CV-05-1600 (CPS), 2006 WL
148913 (E.D.N.Y. Jan. 18, 2006) ........................................................ 22

*Chosun Int'l Inc. v. Chrishna Creations, Ltd.*, 413 F.3d 324 (2d Cir. 2005)................ 8

*Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) .............. 17

*Corcoran v. Ardra Ins. Co.*, 842 F.2d 31 (2d Cir. 1988) .................................. 19

*Dalton v. Educ. Testing Serv.,* 639 N.Y.S.2d 977 (N.Y. 1995) ........................... 24

*Doyle v. Union Ins. Co.*, 277 N.W.2d 36 (Neb. 1979) .................................... 15

*Drain v. Covenant Life Ins. Co.*, 712 A.2d 273 (Pa. 1998) .............................. 15

*Drenis v. Haligiannis*, 452 F. Supp. 2d 418 (S.D.N.Y. 2006) ........................... 22

*Fiala v. Metro. Life Ins. Co.*, 776 N.Y.S.2d 29 (App. Div. 2004) ...................... 10, 13, 14

*Goldstein v. Pataki*, 488 F. Supp. 2d 254 (E.D.N.Y. 2007) .............................. 19

*Hachamovitch v. DeBuono*, 159 F.3d 687 (2d Cir. 1998) ............................... 17

*Hughes v. BCI Int'l Holdings, Inc.* 452 F. Supp. 2d 290 (S.D.N.Y. 2006).................... 16

*In re East New York Sav. Bank Depositors Litig.*, 547 N.Y.S.2d 497 (Sup. Ct. 1989) .................................................................................................. 10, 15

*In re Empire Blue Cross & Blue Shield Customer Litig.*, 622 N.Y.S.2d 843 (Sup. Ct. 1994) ......................................................................................... 10

*In re Kaiser*, 722 F.2d 1574 (2d Cir. 1983) ................................................... 22

*In re M. Fabrikant & Sons, Inc.*, 394 B.R. 721 (Bankr. S.D.N.Y. 2008) ........................................ 21

*In re Norstan Apparel Shops, Inc. v. Lattman,* 367 B.R. 68 (E.D.N.Y. 2007) ............................... 23

*In re Sharp Int'l Corp.*, 403 F.3d 43 (2d Cir. 2005) ................................. 21, 22

*IndyMac Fed. Bank, F.S.B. ex rel F.D.I.C. v. PMI Mortgage Ins. Co.*, No. C 08-04343, 2009 WL 331451 (N.D. Cal. Feb. 11, 2009) ..................... 16

*Intuition Consol. Group, Inc. v. Dick Davis Publ'g Co.*, No. 03 Civ. 5063, 2004 WL 594651 (S.D.N.Y. Mar. 25, 2004) ...................................... 23

*J.S. ex rel. N.S. v. Attica Cent. Schs.,* 386 F.3d 107 (2d Cir. 2004) ................................................. 8

*Kirschner v. Klemons*, 225 F.3d 227 (2d Cir. 2000) .................................... 20

*LaFarge Corp. v. Pa. Ins. Dep't*, 735 A.2d 74 (Pa. 1999) ............................. 15

*Law Enforcement Ins. Co. v. Corcoran*, 807 F.2d 38 (2d Cir. 1986) ............. 19

*Levy v. Lewis*, 635 F.2d 960 (2d Cir. 1980) .................................................. 19

*Marine Midland Bank v. Home Ins. Co.*, 693 N.Y.S.2d 550 (App. Div. 1999) ................................................................................................... 10

*Martin v. Gauvin* No. 2008-0191, 2009 WL 348426 (N.Y. Sup. Ct. Feb. 11, 2009) ................................................................................................... 15

*Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264 (5th Cir. 2009) ............. 19

*N.Y. Dist. Council of Carpenters Pension Fund v. KW Constr., Inc.*, No. 07 Civ. 8008 (RJS), 2008 WL 2115225 (S.D.N.Y. May 16, 2008) ...................... 21

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350 (1989) ........................................................................................... 17

*Prior v. Board of Trs. of N.Y. Fire Dep't Pension Fund*, 800 N.Y.S.2d 355 (Sup. Ct. 2004) ......................................................................................... 11

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996) ................................ 19

*Richards v. Kaskel*, 32 N.Y.2d 524 (N.Y. 1973) .......................................... 13

*Rocanova v. Equitable Life Assurance Soc'y*, 634 N.E.2d 940 (N.Y. 1994) .................................. 17

*Rowe v. Great Atl. & Pac. Tea Co.*, 46 N.Y.2d 62 (N.Y. 1978) ...................................................... 25

*Rowen v. LeMars Mut. Ins. Co. of Iowa*, 230 N.W.2d 905 (Iowa 1975) ......................................... 15

*Scantek Med., Inc. v. Sabella and Accordant Holdings, LLC*, 583 F. Supp.
    2d 477 (S.D.N.Y. 2008) ............................................................................................................ 23

*Serio v. Black, Davis & Shue Agency, Inc.*, No. 05 Civ. 15 (MHD), 2005
    WL 2560390 (S.D.N.Y. 2005) .................................................................................................. 20

*Shah v. Metro. Life Ins. Co.*, No. 108887/00, 2003 WL 728869 (N.Y. Sup.
    Ct. Feb. 21, 2003) ............................................................................................................ 10, 11, 14

*Slawiak v. Hollywood*, 473 N.Y.S.2d 745 (Sup. Ct. 1984) ............................................................. 12

*Spencer v. Frontier Ins. Co.*, 290 Fed. App'x 571, 2008 WL 3914622 (4th
    Cir. 2008) ................................................................................................................................. 19

*Staatsburg Water Co. v. Staatsburg Fire Dist.*, 527 N.E.2d 754 (N.Y. 1988)................................ 9

*State Farm Mut. Auto. Ins. Co. v. Levin*, 702 N.Y.S.2d 694 (App. Div.
    2000)......................................................................................................................................... 11

*Steen v. Quaker State Corp.*, 785 N.Y.S.2d 551 (App. Div. 2004)................................................. 10

*Stephens v. Cooper*, 746 F. Supp. 292 (E.D.N.Y. 1990)................................................................. 20

*Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114 (2d Cir. 1994) ........................................... 18

*Travelers Ins. Co. v. The Home Ins. Co.*, No. 98-9709, 1999 U.S. Dist.
    LEXIS 5523 (C.D. Cal. Feb. 22, 1999)..................................................................................... 20

*Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570 (2d Cir.
    1994)......................................................................................................................................... 18

*VanBrocklen v. Geico*, No. 1-08-CV-254, 2009 WL 414053 (N.D.N.Y. Feb.
    18, 2009)................................................................................................................................... 16

*Wallace v. Merrill Lynch Capital Servs.*, No. 602604/2005, 2005 WL
    3487809 (N.Y. Sup. Ct. Dec. 14, 2005) ................................................................................... 25

## Statutes

3 N.Y. Comp. Codes R. & Regs. tit. 3, § 86.4 ................................................................................ 10

Federal Rule of Civil Procedure 12(b)(1) ......................................................................................... 8

Federal Rule of Civil Procedure 12(b)(6) ..................................................................................... 2, 8

N.Y. C.P.L.R. § 217 ........................................................................................................ 18

N.Y. C.P.L.R. § 408 ........................................................................................................ 13

N.Y. C.P.L.R. § 7803 ................................................................................................ passim

N.Y. C.P.L.R. § 7804 (b) ................................................................................................ 19

N.Y. D.C.L. § 273 ...................................................................................... 7, 16, 20, 22

N.Y. D.C.L. § 274 ...................................................................................... 7, 16, 20, 22

N.Y. D.C.L. § 275 ...................................................................................... 7, 16, 20, 22

N.Y. D.C.L. § 276 ............................................................................................ 7, 16, 20

N.Y. Ins. Law § 109(b) ................................................................................................ 17

N.Y. Ins. Law § 326 .............................................................................................. 16, 17

U.S. Const. amends. 5, 14 ............................................................................................ 13

Plaintiffs respectfully submit this Memorandum of Law, together with the declaration of Patrick T. Shilling, dated May 18, 2009, in opposition to the motion to dismiss the Complaint filed by Defendants MBIA Inc., MBIA Insurance Corporation ("MBIA Insurance"), and MBIA Insurance Corporation of Illinois ("MBIA Illinois") (collectively, the "MBIA Defendants").

## PRELIMINARY STATEMENT

The business of MBIA Insurance has consisted of financial guaranty insurance for (1) public finance bonds and (2) structured finance securities. In February of this year, in the face of massive and continuing multi-billion dollar losses in structured finance insurance claims, the MBIA Defendants orchestrated a massive fraudulent conveyance. Through a series of transactions, the parent company MBIA Inc. caused its principal insurance subsidiary, MBIA Insurance, to transfer its wholly owned subsidiary, MBIA Illinois, to the ownership of MBIA Inc. and then to transfer more than $5.4 billion in assets and its only viable line of business (the insurance of U.S. public finance bonds) into the transferred-away MBIA Illinois. These asset-stripping transactions have left Plaintiffs and the Plaintiff Class – holders of $241 billion in structured finance and foreign public finance securities insured by MBIA Insurance – with claims backed by an insolvent insurer. The Plaintiffs thus commenced this action asserting claims for fraudulent conveyance and for breach of the implied covenant of good faith and fair dealing in their insurance contracts.

In their motion to dismiss, the MBIA Defendants contend that they are immunized from Plaintiffs' claims because they *privately* sought and obtained approvals of certain of their asset-stripping transactions by the Superintendent of the New York State Insurance Department (the "Superintendent") under the New York Insurance Law – which is not even at issue in this lawsuit. They argue that Plaintiffs should be limited to bringing a state court Article 78 proceeding against the Superintendent, where (1) Plaintiffs could not assert their fraudulent conveyance and breach of implied covenant claims against the MBIA Defendants; (2) Plaintiffs would have no automatic

right to discovery; and (3) the sole questions permitted to be raised would be whether the Superintendent's approvals violated lawful procedure or law, were arbitrary or capricious, or abused discretion, thus precluding any meaningful ability to litigate the MBIA Defendants' wrongs.  N.Y. C.P.L.R. § 7803(3).

The MBIA Defendants ask this Court to ignore that the Complaint asserts no claim against the Superintendent.  The MBIA Defendants also grossly overstate the nature of the Superintendent's approval, claiming that "the Superintendent determined that the Transactions complied in all material respects with New York law."  Defs.' Br. at 2.  Not so.  The Superintendent's approval letter says absolutely nothing about whether the transactions violated the New York Debtor and Creditor Law, or whether the transactions breached the implied covenant of good faith and fair dealing in the MBIA Insurance contracts.  The Superintendent's letter simply approved certain of the transactions under particular provisions of the Insurance Law that are *not* the subject of the claims at issue in this lawsuit.

Most fundamentally, it is undisputed that the MBIA Defendants obtained the Superintendent's approvals through purely private submissions for which there was no notice to policyholders, no opportunity for policyholders to be heard, and no hearing.  Moreover, the approvals themselves state that they were made "in reliance on the truth of [the] representations and submissions" of the MBIA Defendants, which could not be fully tested in a truncated Article 78 proceeding.  As demonstrated herein, there is absolutely no statutory or case law support for the MBIA Defendants' position, and the New York Court of Appeals and other courts have repeatedly allowed lawsuits such as this action against alleged corporate wrongdoers to proceed.

The MBIA Defendants' half-hearted Rule 12(b)(6) pleading arguments also have no merit. The Complaint more than sufficiently states claims for constructive and actual fraudulent conveyance and for breach of the implied covenant of good faith and fair dealing.

## STATEMENT OF FACTS

Plaintiffs in this action are funds that invest billions of dollars of capital on behalf of university endowments, public and private pension funds, foundations, other institutional investors, and individuals. Together, they are holders of several hundred million dollars of securities insured by MBIA Insurance. Compl. ¶¶ 1, 17. The proposed class includes holders of $241 billion in "structured finance" securities – such as residential mortgage backed securities ("RMBS"), commercial mortgage backed securities ("CMBS"), asset backed securities ("ABS"), and collateralized debt obligations ("CDOs") – and foreign public finance securities, all of which were guaranteed by MBIA Insurance. Compl. ¶¶ 1, 61. Most of these securities are the so-called "toxic assets" that are at the epicenter of the current financial crisis, and therefore their holders desperately need the protection that was purchased from MBIA Insurance. Compl. ¶¶ 1-2, 61-62.

### A.    The MBIA Insurance Business

The sole business of MBIA Insurance has been to issue financial guaranty insurance, which unconditionally guarantees the payment of principal and interest on public finance securities (e.g., municipal bonds) and structured finance securities (e.g., RMBS, CMBS, ABS, and CDOs). Compl. ¶ 24. The MBIA Defendants explicitly marketed these policies as providing "credit enhancement" based on MBIA Insurance's investment-grade credit rating, allowing the insured securities to also receive an investment grade rating. Compl. ¶¶ 10, 24-25, 28, 31-32. MBIA Insurance's insurance certificates represented that its financial statements fairly presented its financial condition. Compl. ¶ 31; Shilling Decl. Ex. A at 1.

### B.    The Asset-Stripping Transactions

MBIA Insurance's public finance business has been highly safe and profitable, paying just $669 million in total claims in the entire 35 year history of MBIA, while earning billions in premiums. Compl. ¶ 27. By contrast, in just 2008 alone, MBIA Insurance paid over $1.4 billion

in claims on structured finance securities, with many billions more in structured finance losses expected by analysts and rating agencies still to come.  Compl. ¶ 58.

It thus came as a shock to MBIA Insurance policyholders and to the financial world when on February 18, 2009, MBIA Inc. announced that it had "restructured" MBIA Insurance, by funneling MBIA Insurance's safe and profitable U.S public finance insurance business, along with over $5.4 billion of its assets, to MBIA Illinois, which had up until that point been a direct subsidiary of MBIA Insurance.  Compl. ¶¶ 4, 38-39, 52-54.  Worse yet, as part of this "restructuring," MBIA Inc. stripped from MBIA Insurance its 100% ownership of MBIA Illinois and transferred it to a new holding company owned solely by MBIA Inc.  Compl. ¶ 39.  Nothing approaching adequate consideration was paid to MBIA Insurance for these transactions:

- MBIA Insurance transferred $1.147 billion in cash and securities as a dividend to MBIA Inc. (which then transferred those assets to MBIA Illinois) for no consideration (Compl. ¶ 40);

- MBIA Insurance transferred $938 million in cash and securities plus all of the stock of MBIA Illinois to MBIA Inc. as a purported "redemption" of capital stock owned by MBIA Inc. in MBIA Insurance – again for no consideration (Compl. ¶ 40);

- MBIA Insurance paid $2.89 billion to MBIA Illinois for the reinsurance of all of the *existing* U.S. public finance policies insured or reinsured by MBIA Insurance.  Compl. ¶ 41.  This transaction also did not adequately compensate MBIA Insurance as this entire business had paid out only $669 million in claims over 35 prior years (Compl. ¶¶ 27, 72); and

- MBIA Insurance transferred all of its *future* U.S. public finance bond business to MBIA Illinois for no consideration (Compl. ¶¶ 38, 72, 77).

The result of this transaction was to divide MBIA Insurance into two entities:  a healthy, well-capitalized U.S. public finance insurance company (MBIA Illinois) operating to benefit solely MBIA Inc. and its senior executives, and a moribund and insolvent MBIA Insurance with mammoth-sized insurance exposures to the holders of the now "toxic" structured finance and foreign public finance securities it had guaranteed.  Compl. ¶¶ 5, 44.

The MBIA Defendants orchestrated the asset-stripping transactions despite knowing for a certainty the damage they would cause MBIA Insurance's remaining policyholders. Compl. ¶¶ 46-51. When the transactions were announced, MBIA Inc.'s CEO revealed the MBIA Defendants' true intent by stating that he now "would expect some [policyholders] would be far more interested in commuting" their insurance policies given MBIA Insurance's financial condition. Compl. ¶ 46. In fact, the MBIA Defendants knew they could have pursued alternatives to achieve their goal of separating the MBIA Insurance U.S. public finance business from its structured finance business without rendering MBIA Insurance insolvent to the detriment of its policyholders. Compl. ¶¶ 47-51. For example, the MBIA Defendants could have followed the lead of their principal competitor, AMBAC, by leaving MBIA Illinois as a subsidiary of MBIA Insurance, where its profitability as a separate U.S. public finance insurer would have benefited the ultimate parent MBIA Inc. and its executives only *after* the policy obligations of MBIA Insurance were provided for. Compl. ¶ 48. But instead, the MBIA Defendants pulled MBIA Illinois out from under the ownership of MBIA Insurance so that it now is only owned by MBIA Inc., which can dividend MBIA Illinois's profits to itself, while leaving the MBIA Insurance policyholders with an insolvent insurer that now has zero stake in its former subsidiary.

**C.      Effect Of The Transactions:  MBIA Insurance's Insolvency**

The effect of the transactions is that MBIA Insurance's remaining $241 billion in policyholders are now "insured" by an insolvent insurance company. Compl. ¶¶ 5, 9, 46, 51. The market, reflecting serious doubts about MBIA Insurance's solvency, reacted immediately to the detrimental effects of the transactions. The value of certain RMBS insured by MBIA Insurance dropped precipitously, immediately trading down by 40% of their pre-transaction value. Compl. ¶¶ 8, 60. Similarly, after the announcement of the transactions, the price for credit default swaps (protection against default on debt) on MBIA Insurance shot up to an astronomical price of 70%

of the face amount of protection purchased. Compl. ¶ 8. Moreover, despite paying 14% interest, MBIA Insurance's surplus notes – issued just a year earlier – traded down from about 55% of face amount to approximately 35% on the news. Compl. ¶ 8.[1] Likewise, Moody's Investors Service immediately downgraded MBIA Insurance's credit ratings to "junk territory." Compl. ¶ 11, 52. Barclays Capital stated that the transaction "leaves the policyholders at MBIA [Insurance] that much closer to potential regulatory seizure." Compl. ¶¶ 53, 54, 58.

**D.    The MBIA Defendants Privately Obtained The Superintendent's Approvals Of Certain Aspects Of The Transactions**

The MBIA Defendants *privately* submitted to the Superintendent for approval those portions of the transactions that required approval under the New York Insurance Law. MBIA policyholders were not given notice, nor have they been given access (before or after approval) to the MBIA Defendants' submissions to the Superintendent. The Superintendent did not (and was not required to) hold a public hearing and policyholders had no opportunity to participate.

The Superintendent gave the MBIA Defendants approval for certain portions of the asset-stripping transactions in a February 17, 2009 approval letter (the "Approval Letter"). Significantly, the Approval Letter explicitly states that each of the Superintendent's approvals was made "in reliance on the truth of th[e] representations and submissions" made by the MBIA

---

[1] Holders of these surplus notes have instituted a similar fraudulent conveyance action in Delaware, *Third Ave. Trust, et al. v. MBIA Ins. Corp., et al.*, C.A. No. 4486-VCS (Del. Ch.). In addition, nineteen of the world's largest banks owning structured finance securities insured by MBIA Insurance also filed a fraudulent conveyance and breach of implied covenant lawsuit against the MBIA Defendants in the Supreme Court-New York County on May 13, 2009, *ABN AMRO Bank N.V., et al. v. MBIA Inc., et al.*, No. 601475/09 (N.Y. Sup. Ct.).

Defendants, which have not been made public.  Shilling Decl. Ex. B at 6, 7, 8, 9, 10.[2]

**E.      The Claims Asserted in Plaintiffs' Complaint**

Plaintiffs' Complaint asserts claims that the MBIA Defendants are liable for actual (Count I) and constructive (Count II) fraudulent conveyance pursuant to the New York Debtor & Creditor Law ("N.Y. D.C.L.") because the asset stripping transactions (1) were undertaken with the intent to hinder, delay, and defraud MBIA Insurance's present and future creditors (N.Y. D.C.L. § 276); (2) were made without payment of adequate consideration and caused MBIA Insurance to be insolvent (N.Y. D.C.L. § 273); (3) leave MBIA Insurance with an unreasonably small amount of capital (N.Y. D.C.L. § 274); and (4) leave MBIA Insurance unable to pay its debts (N.Y. D.C.L. § 275).  Compl. ¶¶ 71-80.  The Complaint also alleges that the MBIA Defendants' asset stripping transactions breached the implied covenant of good faith and fair dealing in the MBIA Insurance financial guaranty insurance contracts.  Compl. ¶¶ 81-84.

For relief, the Complaint seeks money damages, a declaration that the asset-stripping transactions are null and void, and an adjudication holding MBIA Illinois responsible for the policy obligations of MBIA Insurance as an unlawful asset transferee.  Compl. Prayer for Relief.

## APPLICABLE STANDARDS

When considering a motion to dismiss for lack of subject matter jurisdiction under Rule

---

[2] The MBIA Defendants' brief overstates the scope of the Superintendent's Approval Letter.  The Approval Letter contains no finding that "the Transactions complied in all respects with all New York law" as touted in their brief.  Defs.' Br. at 2.  There was no "solven[cy]" finding in the Approval Letter (Defs.' Br. at 2), only an approval of the dividend portion of the transactions after finding, "*in reliance on th[e] submissions and representations*" *of the MBIA Defendants*, that MBIA Insurance "will retain sufficient surplus to support its obligations and writings" after the transactions.  Shilling Decl. Ex. B at 6.  The Approval Letter also did not conclude that each or all of the transactions were "fair and equitable."  Defs.' Br. at 2.  Instead, the Superintendent only "considered" whether the *reinsurance arrangements* were "fair and equitable" in determining that he "did not disapprove" of them.  Shilling Decl. Ex. B at 7-8.  And, the Approval Letter did not find that each or all of the transactions "did not adversely affect the interests of policyholders."  Defs.' Br. at 2.  That finding was only made about the "Master Services Agreement" in which MBIA Insurance agreed to provide certain services to MBIA Illinois.  Shilling Decl. Ex. B at 9.

12(b)(1), a court "must accept as true all material factual allegations in the complaint," and "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue." *J.S. ex rel. N.S. v. Attica Cent. Schs.,* 386 F.3d 107, 110 (2d Cir. 2004). When considering a motion to dismiss under Rule 12(b)(6), a complaint requires only "a short and plain statement" sufficient to provide "fair notice of what the . . . claim is and grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted). A court cannot engage in weighing of evidence. *Chosun Int'l Inc. v. Chrishna Creations, Ltd.*, 413 F.3d 324, 327 (2d Cir. 2005). Instead, a court must accept "all plaintiff's factual allegations as true and [draw] all reasonable inferences in the plaintiff's favor." *Id.*

**ARGUMENT**

I.     **THE SUPERINTENDENT'S APPROVALS DO NOT BAR PLAINTIFFS' CLAIMS**

The MBIA Defendants contend that simply because they *privately* obtained the Superintendent's approvals for certain aspects of the transactions *under the Insurance Law*, Plaintiffs' exclusive forum and remedy for the unlawful asset-stripping transactions is a state court Article 78 proceeding – a truncated proceeding in which Plaintiffs would not be permitted to assert their fraudulent conveyance or breach of implied covenant claims against the MBIA Defendants – instead of a full plenary action in this Court where Plaintiffs' claims can be fully heard. Their premise is that this action is an indirect "collateral" challenge to the Superintendent's determination. But that is not so. This case is a direct challenge to the MBIA Defendants' unlawful conduct. Regulated entities such as the MBIA Defendants must comply with all generally applicable laws such as the fraudulent conveyance law and the implied covenant of good faith and fair dealing, *as well as* complying with laws that specifically regulate their business.

But more fundamentally, the MBIA Defendants' dismissal motion is, in effect, asking the Court to find that Plaintiffs are collaterally estopped from bringing the claims in this action since

Plaintiffs' fraudulent conveyance and implied covenant claims against the MBIA Defendants cannot be asserted in an Article 78 proceeding. Under New York law, an administrative agency's determination does not preclude a plaintiff from litigating related issues in another forum unless, among other things, the issues are identical, the plaintiff opposing preclusion had a "full and fair opportunity" to litigate the issue, and the agency was acting in a quasi-judicial capacity. *Staatsburg Water Co. v. Staatsburg Fire Dist.*, 72 N.Y.2d 147, 153 (1988). None of these requirements are met here. The Superintendent did not purport to determine whether the asset-stripping transactions constitute a fraudulent conveyance or whether the transactions breach the implied covenant of good faith and fair dealing. Moreover, the Superintendent's determinations were not made in a quasi-judicial proceeding – or indeed in any proceeding – in which Plaintiffs had any notice or opportunity to be heard. The MBIA Defendants went to the Superintendent privately and what happened in that process remains, to this day, entirely secret.

As shown below, the fact that a private party *privately* obtained a state regulator's approval for a transaction does not bar a plenary lawsuit against the private party for its wrongdoing in the transaction or require exclusive resort to an Article 78 proceeding against the regulator.

## A.    Regulatory Approval Does Not Bar Claims Against Private Parties Where There Was No Notice Or Opportunity To Be Heard

Regulatory approval does not bar claims asserted against private parties where the plaintiffs were not afforded notice and an opportunity to be heard with respect to the administrative approval raised as a purported bar. It is undisputed that the MBIA Defendants *privately* obtained the Superintendent's approvals – which were explicitly issued "in reliance on truth of th[e] representations and submissions" provided by the MBIA Defendants – without providing the policyholder Plaintiffs any notice, hearing, or other opportunity to participate. The MBIA Defendants have not cited a single similar case in which a court has barred a plenary

lawsuit against a private party based on a privately obtained regulatory approval.

In every case cited by the MBIA Defendants (or of which Plaintiffs are aware) in which a court dismissed a plenary lawsuit against a private party based on a regulatory approval, there was prior notice to the plaintiff, a public hearing or other opportunity to participate, or a vote approving the challenged action, and sometimes all three. Thus, *Fiala v. Metropolitan Life Ins. Co.*, 776 N.Y.S.2d 29 (App. Div. 2004), and *Shah v. Metropolitan Life Ins. Co.*, No. 108887/00, 2003 WL 728869 (N.Y. Sup. Ct. Feb. 21, 2003), cited by the MBIA Defendants, concerned Metropolitan Life Insurance Company's ("MetLife") demutualization pursuant to which the Insurance Law provided for the Superintendent to determine whether to approve the transaction after notice in a proxy-type information statement to all affected policyholders, a super-majority vote of policyholders, and a public hearing. *Shah*, 2003 WL 728869, at *2. Likewise, *Brawer v. Johnson*, 647 N.Y.S.2d 553 (App. Div. 1996), and *In re East New York Savings Bank Depositors Litigation*, 547 N.Y.S.2d 497 (Sup. Ct. 1989), both involved bank demutualizations that required, under the Banking Law, public notice, hearings, and a vote by the affected account holders. 3 N.Y. Comp. Codes R. & Regs. tit. 3, § 86.4. Similarly, public hearings were held before the agency determinations in *In re Empire Blue Cross & Blue Shield Customer Litigation*, 622 N.Y.S.2d 843, 845 (Sup. Ct. 1994), and *Steen v. Quaker State Corp.*, 785 N.Y.S.2d 551, 552 (App. Div. 2004). And, after notice, more than two-thirds of the affected policyholders in *Academic Health Professionals Insurance Ass'n v. MQ of New York, Inc.* voted to approve the challenged action. No. 605452/01, 2003 WL 25668211 (N.Y. Sup. Ct. Apr. 14, 2003).

By contrast, in *Marine Midland Bank v. Home Insurance Co.*, 693 N.Y.S.2d 550 (App. Div. 1999), a creditor brought a lawsuit claiming that an insurance company's acquisition was a fraudulent conveyance. The defendants – like the MBIA Defendants here – argued that the complaint should be dismissed because the transaction had been approved by the New Hampshire

Insurance Department and the plaintiff's sole recourse was to appeal that Department's approval. *Id.* at 552. The Appellate Division affirmed the denial of the motion to dismiss on the primary ground that even though the New Hampshire Insurance Department had held a hearing, there was insufficient notice to the plaintiff's predecessor in interest, "the single instance of notice by publication of the administrative hearing having been insufficient." *Id.* at 551. So too here. There was no notice or hearing with respect to the approvals obtained by the MBIA Defendants.

The MBIA Defendants cite three cases to attempt to support their contention that notice and an opportunity to be heard are not required to bar suits against private parties. Defs.' Br. at 15. Two of the cited cases – *Prior v. Board of Trustees of New York Fire Department Pension Fund*, 800 N.Y.S.2d 355 (Sup. Ct. 2004), and *State Farm Mutual Automobile Insurance Co. v. Levin*, 702 N.Y.S.2d 694 (App. Div. 2000) – simply involved lawsuits *against the government agencies* that made the determinations (a municipal pension fund and the Superintendent), not private parties sued for actionable wrongdoings. The MBIA Defendants also point to one amendment of the demutualization plan in *Shah* that was approved by the Superintendent after the original notice, hearing, and policyholder vote. Defs.' Br. at 15-16. However, the plaintiffs' claim in *Shah* relating to that amendment was simply that the Superintendent violated the procedural provisions of the demutualization statute by approving the amendment without a new hearing and vote (*Shah*, 2003 WL 728869, at *6) – precisely the sort of challenge to an administrative determination that should be raised by an Article 78 appeal as to "whether a determination was made in violation of lawful procedure." N.Y. C.P.L.R. § 7803(3).

Indeed, the MBIA Defendants fail even to address the fact that the Superintendent's Approval Letter states *eight times* that the approvals were issued "in reliance on the truth of th[e] representations and submissions" of the MBIA Defendants. Shilling Decl. Ex. B at 6, 7, 8, 9, 10. The policyholders had no notice or opportunity to contest the "truth" of the MBIA Defendants'

11

submissions to the Superintendent, and the allegations in the Complaint make clear that there is ample reason to question the accuracy of such submissions.  Compl. ¶¶ 5, 8, 52-59.

Events since the filing of the Complaint only underscore the reasons to question the accuracy of the MBIA Defendants' private submissions to the Superintendent.  In a presentation to investors in March of this year, just a few weeks after the Superintendent approved the transactions, MBIA Insurance's President and Chief Financial Officer projected that its payments for losses on second lien RMBS would be only approximately $625 million for *all* of 2009. Shilling Decl. Ex. C at 16.  This projection was not credible, since MBIA Insurance made $1.4 billion in loss payments on second lien RMBS in 2008, with most of those payments coming in the last two quarters, and defaults since then have increased significantly and are expected to continue to do so for some years.  Shilling Decl. Ex. D at 6.  The truth has now come to light. During the first quarter of 2009 alone, MBIA Insurance paid out $622 million on second lien RMBS, on pace to pay out for the full year 2009 four times the $625 million that it had projected to securities analysts in March (and presumably to the Superintendent in February) – or more than $2.4 billion as opposed to the $625 million projected.  Shilling Decl. Ex. E at 10.  This is just one example of the reasons to question the "truth" of the MBIA Defendants' submissions.

The due process importance of requiring notice and some ability to participate before a regulatory determination can be raised as a bar to a plenary lawsuit *against a private party* – particularly here where the determination was based on the "truth of th[e] representations and submissions" of the MBIA Defendants – is manifest:  Article 78 review of agency determinations is of a "summary nature" with a goal of "swift determination."  *Slawiak v. Hollywood*, 473 N.Y.S.2d 745, 748 (Sup. Ct. 1984).  Indeed, C.P.L.R. § 7803 makes clear that the only questions that can be raised in an Article 78 proceeding are whether the agency violated lawful procedure or law, was arbitrary and capricious, or abused its discretion.  N.Y. C.P.L.R. § 7803(3).  And, there is

not even an automatic right to discovery.  N.Y. C.P.L.R. § 408; *see* U.S. Const. amends. 5, 14.

In short, at a minimum, notice and an opportunity to be heard in the regulatory approval process, absent here, are prerequisites to imposing a bar on a plenary lawsuit brought against a private party.  It simply is not and cannot be the law that a private party can insulate itself from a lawsuit for its unlawful acts by seeking regulatory approval in a private process.

**B.      Regulatory Approval Does Not Bar Independent Claims Against Private Parties**

New York case law – including cases cited by the MBIA Defendants – also makes clear that regulatory approvals do not bar claims that do not challenge whether the regulatory determinations were lawful or proper but instead, like the claims here, challenge unlawful conduct by private party defendants.  *See, e.g., Richards v. Kaskel*, 32 N.Y.2d 524, 535 & n.5 (1973); *Fiala*, 776 N.Y.S.2d at 32.  The MBIA Defendants are the wrongdoers that intentionally set these fraudulent transactions in motion – not the Superintendent, whose approvals were given "in reliance on the truth of [the MBIA Defendants' private] representations and submissions."  The Complaint does not allege that the transactions violated the New York Insurance Law or that the Superintendent acted unlawfully.  Plaintiffs assert claims against only the MBIA Defendants for fraudulent conveyance and breach of the implied covenant of good faith and fair dealing.

In *Richards v. Kaskel*, the New York Court of Appeals held that tenants were not required to bring an Article 78 proceeding and could assert claims in a plenary lawsuit that their landlord engaged in fraudulent and other wrongful conduct related to a cooperative conversion plan, despite the fact that the New York Attorney General had approved the plan.  32 N.Y.2d at 535.  The Court recognized that although the statutory scheme vested jurisdiction in the Attorney General to approve the plan and that challenges to such an approval must be brought in an Article 78 proceeding, that did not deprive the tenants of their right to bring a plenary action against the landlord for its wrongdoing in the cooperative conversion process.  *Id.* at 535 n.5.

13

In *Fiala v. Metropolitan Life Insurance Co.* – a case relied upon by the MBIA Defendants – after the Superintendent approved MetLife's plan of demutualization under the Insurance Law demutualization statute, the plaintiff policyholders sued the Superintendent, MetLife, and MetLife's directors. 776 N.Y.S.2d 29. The Supreme Court below in *Shah*, 2003 WL 728869, dismissed most of the action as a collateral attack on the Superintendent's approval. The First Department affirmed the dismissal of only those claims that challenged the Superintendent's interpretation of the demutualization statute, such as the claims against the Superintendent that MetLife's demutualization violated the demutualization statute, 776 N.Y.S. 2d at 31, the claim against MetLife that conducting a demutualization in violation of the demutualization statute was a breach of the plaintiffs' insurance contracts, *id.* at 32; *Shah*, 2003 WL 728869, at *6, and the breach of fiduciary duty claims that challenged whether the demutualization plan was fair and equitable, precisely the determination made by the Superintendent, *Fiala*, 776 N.Y.S.2d at 32; *Shah*, 2003 WL 728869, at *1, 13-14. Significantly, however, the First Department (1) reversed the dismissal of plaintiffs' claims against MetLife and its directors alleging that they failed to disclose in the demutualization information statement provided to policyholders that MetLife planned to buy back its own shares after the demutualization, and (2) allowed the plaintiffs to replead their fraud claim that certain policyholders received preferential treatment. *Fiala*, 776 N.Y.S.2d at 32. In short, the First Department allowed the plaintiffs' lawsuit against MetLife and its directors to proceed.[3]

---

[3] Although ignored by the MBIA Defendants, the Superintendent's privately obtained approvals here are vastly different than the approval of the demutualization plan in *Fiala* and *Shah*, where, by statute, the Superintendent was required to find after proxy-type notice, a hearing, and a policyholder vote, that the transaction "was in the best interests of the insurer and its policyholders." *Shah*, 2003 WL 728869, at *14. Even under those circumstances, the *Fiala* court allowed the plaintiffs to maintain a plenary lawsuit on claims of wrongdoing by the private party defendants that were not challenging the Superintendent's finding that the transaction complied with the demutualization statute. But here there was no overall approval of the transactions, no notice, no hearing, and no opportunity for the policyholders to participate.

14

And, in *Martin v. Gauvin*, No. 2008-0191, 2009 WL 348426, at *1-2 (N.Y. Sup. Ct. Feb. 11, 2009), the court rejected a defendant's argument that the plaintiffs, who asserted trespass and nuisance claims arising out of defendant's construction of a dock in front of the plaintiffs' property, must bring their action in an Article 78 proceeding because the New York Office of General Services had denied a similar complaint by plaintiffs. *See also In re East New York Sav. Bank Depositors Litig.*, 547 N.Y.S.2d 497, 501 (Sup. Ct. 1989) (if adequately pled, independent fraud claims relating to the proxy notice could have been asserted in a plenary action).

The highest courts in other states have taken the same approach. *See Rowen v. LeMars Mut. Ins. Co. of Iowa*, 230 N.W.2d 905, 911-12 (Iowa 1975) (insurance department's power to approve transactions does not deny "aggrieved persons their common-law and other statutory remedies"); *Doyle v. Union Ins. Co.*, 277 N.W.2d 36 (Neb. 1979) (permitting policyholders to bring fiduciary duty claims arising out of a transaction approved by the Nebraska Director of Insurance); *LaFarge Corp. v. Pa. Ins. Dep't*, 735 A.2d 74, 77 (Pa. 1999) ("[N]o judicial remedies [were] foreclosed by" Pennsylvania Insurance Department's "approval of [an insurance company's] plan of restructure and division" that, like the MBIA Defendants' asset-stripping transaction, sought to ring-fence toxic liabilities by dividing the company's assets); *Drain v. Covenant Life Ins. Co.*, 712 A.2d 273 (Pa. 1998) (allowing policyholders to bring tort claims arising from a merger approved after a public hearing by the Pennsylvania Insurance Department).

This lawsuit is no different than the plenary lawsuits allowed to proceed in *Richards*, *Fiala* and the other above-discussed cases. Plaintiffs are claiming that the MBIA Defendants' conduct violates the New York fraudulent conveyance laws and breaches the implied covenant in MBIA Insurance's contracts. The Superintendent made no determination that the transactions did not violate the New York Debtor and Creditor Law or breach the implied covenant. Plaintiffs are not challenging whether any approvals by the Superintendent complied with the Insurance Law. The

15

Complaint does not allege that the Superintendent violated lawful procedures or law, acted arbitrarily or capriciously, or abused his discretion – the only claims that could be raised in an Article 78 proceeding. *See* N.Y. C.P.L.R. § 7803.

Plaintiffs' straightforward fraudulent conveyance and breach of implied covenant claims against the MBIA Defendants are entitled to be brought in a full plenary lawsuit. Fraudulent conveyance statutes are a vital protection for creditors that are victims of unlawful transfers, and such claims are routinely heard in plenary proceedings in federal court. *See, e.g.*, *Hughes v. BCI Int'l Holdings, Inc.* 452 F. Supp. 2d 290, 307-08 (S.D.N.Y. 2006) (fraudulent conveyance claims in diversity action). New York's fraudulent conveyance statutes contain no exception for transactions approved by a regulator. In fact, the New York Debtor and Creditor Law unambiguously states that "[e]very conveyance made . . . with actual intent . . . to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors," N.Y. D.C.L. § 276, and prohibits "[e]very conveyance made and every obligation incurred" by a business without fair consideration while insolvent, left with unreasonably small capital, or the inability to pay its debts. N.Y. D.C.L. §§ 273-75. Similarly, federal courts regularly hear implied covenant of good faith and fair dealing claims involving insurance policy contracts. *See, e.g.*, *IndyMac Fed. Bank, F.S.B. ex rel F.D.I.C. v. PMI Mort. Ins. Co.*, No. C 08-04343, 2009 WL 331451 (N.D. Cal. Feb. 11, 2009) (denying insurer's motion to dismiss breach of implied covenant claim); *VanBrocklen v. Geico*, No. 1-08-CV-254, 2009 WL 414053 (N.D.N.Y. Feb. 18, 2009).

For the same reasons, New York Insurance Law § 326 has no bearing here. That statute merely provides that "any order, regulation or decision of the superintendent is declared to be

subject to judicial review" in an Article 78 proceeding.  N.Y. Ins. Law § 326(a).  Because

Plaintiffs are not seeking review of the Superintendent's approvals, Section 326 is irrelevant.[4]

## II.    *BURFORD* ABSTENTION IS COMPLETELY INAPPROPRIATE IN THIS CASE

The MBIA Defendants also ask this Court to abstain from exercising jurisdiction under the

abstention doctrine articulated in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).  However, the

Supreme Court has held that federal courts have a "virtually unflagging obligation . . . to exercise

the jurisdiction given them."  *Colo. River Water Conservation Dist. v. United States*, 424 U.S.

800, 817 (1976); *Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir. 1998) (federal courts

must exercise their jurisdiction "in all but the most extraordinary cases").  Indeed, the Supreme

Court has not found *Burford* abstention to be appropriate in any case since 1951.  *See Ala. Pub.*

*Serv. Comm'n v. S. Ry. Co.*, 341 U.S. 341 (1951).

As the MBIA Defendants recognize (Defs.' Br. at 17), the first question a court must

address when considering *Burford* abstention is whether "timely and adequate state-court review is

available."  *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361

(1989).  An Article 78 proceeding is not adequate here.  Article 7803 specifically states that "the

only questions that may be raised" in an Article 78 proceeding concerning a regulatory

determination made without a hearing are whether the Superintendent violated lawful procedures

or law, acted arbitrarily or capriciously, or abused his discretion.  N.Y. C.P.L.R. § 7803(3).

---

[4] Nothing in the New York Insurance Law – or in any of the cases the MBIA Defendants cite – precludes
policyholders from pursuing otherwise available legal remedies against insurers.  In fact, the Insurance Law
itself states:  "Every penalty imposed by this section shall be in addition to any penalty or forfeiture
otherwise provided by law."  N.Y. Ins. Law § 109(b); *see also, e.g., Belco Petroleum Corp. v. AIG Oil Rig,*
*Inc.*, 565 N.Y.S.2d 776, 780 & n.4 (App. Div. 1991) (citing § 109(b) and noting the "rule of statutory
construction . . . that when the common law gives a remedy, and another remedy is given by statute, the
latter is cumulative, unless made exclusive by the statute") (internal quotation marks omitted); *Rocanova v.*
*Equitable Life Assurance Soc'y*, 83 N.Y.2d 603, 615 (N.Y. 1994) (*Belco* "correctly . . . held that an
insured's common-law right to sue an insurer for punitive damages for morally culpable conduct directed at
the general public was not preempted by . . . [Insurance Law] Section 2601," which prohibits unfair claim
settlement practices).

Plaintiffs' grievance is not with the Superintendent's interpretation of the New York Insurance Law, but instead with the MBIA Defendants for engaging in the asset-stripping transactions in violation of the fraudulent conveyance law and in breach of the implied covenant of good faith and fair dealing in Plaintiffs' insurance contracts. Plaintiffs could not bring those claims in an Article 78 proceeding.[5]

If a court determines that there exists adequate state-court review – which there is not here – it must then go on to weigh "the degree of specificity of the state regulatory scheme, the necessity of discretionary interpretation of state statutes, and whether the subject matter of the litigation is traditionally one of state concern." *Bethphage Lutheran Serv., Inc. v. Weicker*, 965 F.2d 1239, 1243 (2d Cir. 1992). All three of these factors weigh against abstention here.

The MBIA Defendants argue that the first two factors favor abstention because the New York insurance statutes are complex and involve discretionary decisions by the Superintendent. Defs.' Br. at 18-20. However, this argument is based on the fallacy that Plaintiffs' claims will require the Court to interpret New York Insurance Law. The *only* laws that Plaintiffs' claims require the Court to interpret and apply are the New York fraudulent conveyance statutes and the common law with respect to the implied covenant of good faith and fair dealing – claims that federal courts regularly hear. *See, e.g., Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114 (2d Cir. 1994) (fraudulent conveyance claim under New York law); *Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570 (2d Cir. 1994) (implied covenant claim under New York law).

With respect to the third factor, the MBIA Defendants argue that abstention is appropriate because "the regulation of insurance is an area of exclusive and overriding state concern." Defs.'

---

[5] The statute of limitations for an Article 78 proceeding will expire on or about June 17, 2009, four months after the date of the Superintendent's Approval letter. N.Y. C.P.L.R. § 217. However, as shown, there is no reason to bring such a proceeding because it cannot adjudicate Plaintiffs' claims.

Br. at 20.  The courts, however, regularly deny *Burford* abstention in cases involving insurance. *See, e.g., Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 729, 731 (1996) (rejecting abstention and describing action by insurance commissioner against insurance company as "nothing more than a run-of-the-mill contract dispute"); *Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 272 (5th Cir. 2009) (denying abstention due to failure to show that "Louisiana has a significant interest in this case beyond a general assertion that insurance law is important to the state"); *Spencer v. Frontier Ins. Co.*, 290 Fed. App'x 571, 574-75, 2008 WL 3914622 (4th Cir. 2008) (denying abstention because "although New York clearly has an interest in the uniform regulation of its insurance industry, a judgment in this case would not upset that uniformity").[6]

The cases on which the MBIA Defendants rely do not support their request for abstention. Unlike here, the Superintendent of Insurance was a party in *Levy v. Lewis*, 635 F.2d 960 (2d Cir. 1980), *Law Enforcement Insurance Co. v. Corcoran*, 807 F.2d 38 (2d Cir. 1986), and *Corcoran v. Ardra Insurance Co.*, 842 F.2d 31 (2d Cir. 1988), and each of these cases involved insurance company liquidations in which the Superintendent had taken control of the insurance company at issue.  In liquidation and rehabilitation proceedings, "all claims and challenges [must] be centralized in the [state] court supervising the liquidation or rehabilitation" to ensure equal treatment of all claimants.  *Law Enforcement Ins. Co.*, 807 F.2d at 43.  Here, MBIA Insurance is not in a centralized liquidation or rehabilitation proceeding, and the Superintendent is not a party. Indeed, the MBIA Defendants cite two cases recognizing this precise distinction.  *See Alliance of Am. Insurers v. Cuomo*, 854 F.2d 591, 600 (2d Cir. 1988) (reversing decision to abstain because

---

[6] Another factor that weighs against *Burford* abstention is whether there is a specialized state court experienced in dealing with the specific regulatory scheme at issue.  *See, e.g., Goldstein v. Pataki*, 488 F. Supp. 2d 254, 272 (E.D.N.Y. 2007) (courts consider "whether the state 'ha[s] created a centralized system of judicial review of commission orders, which permit[s] the state courts, like the Railroad Commission itself [in *Burford*], to acquire a specialized knowledge of the regulations and industry'") (quoting *Bethphage*, 965 F.2d at 1245)).  Article 78 proceedings are filed in a court of general jurisdiction – New York Supreme Court, which has no such specialized expertise.  N.Y. C.P.L.R. § 7804(b).

"[t]he cases the lower court relied upon all involved ongoing state judicial proceedings regarding the Superintendent's power to declare these insurers insolvent and subject them to centralized state receivership.  In contrast, this is not a liquidation case."); *Serio v. Black, Davis & Shue Agency, Inc.*, No. 05 Civ. 15 (MHD), 2005 WL 2560390, at *3 (S.D.N.Y. 2005) ("Those circumstances [justifying abstention] are typically found to exist when a party seeks to assert a federal-court claim that would otherwise be dealt with in an ongoing rehabilitation or liquidation proceeding.").

The other cases cited by the MBIA Defendants also do not support *Burford* abstention.  In *Stephens v. Cooper*, the plaintiffs challenged whether the Superintendent complied with state administrative procedures and acted within his authority.  746 F. Supp. 292, 296 (E.D.N.Y. 1990). No such challenge is made here.  And while the court in *Travelers Insurance Co. v. The Home Insurance Co.*, No. 98-9709, 1999 U.S. Dist. LEXIS 5523 (C.D. Cal. Feb. 22, 1999), abstained from hearing some claims, it did so because the plaintiffs "had an opportunity to conduct discovery, present evidence, examine, and cross-examine witnesses, and offer oral and written arguments" in connection with the regulatory approval in that case.  *Id.* at *14-*15.  Those protections were sorely lacking here.[7]

## III.   THE COMPLAINT MORE THAN ADEQUATELY STATES CLAIMS FOR FRAUDULENT CONVEYANCE AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### A.    The Complaint Alleges Actual Fraudulent Conveyance With Particularity

Plaintiffs assert claims for both actual fraudulent conveyance (N.Y. D.C.L. § 276) and constructive fraudulent conveyance (N.Y. D.C.L. §§ 273-75).  "The party asserting an intentional fraudulent transfer claim must specify the property that was allegedly conveyed, the timing and frequency of those allegedly fraudulent conveyances, [and] the consideration paid."  *In re M.*

---

[7] In any event, the Court cannot abstain from hearing Plaintiffs' damages claims.  *See, e.g., Kirschner v. Klemons*, 225 F.3d 227, 238 (2d Cir. 2000) (noting that the Second Circuit has "refused to abstain under [*Burford*], where claims for money damages were at issue").

*Fabrikant & Sons, Inc.*, 394 B.R. 721, 733 (Bankr. S.D.N.Y. 2008) (internal quotation marks omitted). The Complaint alleges these elements with great specificity, *see, e.g.,* Compl. ¶¶ 1-6, 37-45, 51, 72-74, and the MBIA Defendants do not argue otherwise.

Instead, the MBIA Defendants contend that the Complaint fails to allege fraudulent intent with particularity. Defs.' Br. at 22. The Complaint, however, contains direct allegations of fraudulent intent, describing in detail how the MBIA Defendants intentionally "stripped over $5.4 billion of assets from MBIA Insurance," as well as its only source of ongoing business, leaving the MBIA Insurance policyholders "insured" by an insolvent insurance company with no source of future income generating business. Compl. ¶¶ 2, 5, 9, 44-45, 51, 72-74. The Complaint specifically alleges that (1) the MBIA Defendants engaged in the asset-stripping transactions intentionally in order to benefit the parent company MBIA Inc. and its senior executives (Compl. ¶¶ 2, 7, 44); (2) the MBIA Defendants knew that the transactions would harm policyholders, and MBIA's CEO even stated that he hoped that it would force policyholders to commute their insurance agreements (Compl. ¶ 46); and (3) the MBIA Defendants intentionally rejected an alternative structure for the transaction that would have kept MBIA Illinois as a subsidiary of MBIA Insurance because that structure would have meant that the profits from the MBIA Illinois public finance business would have had to have been made available to pay MBIA Insurance policyholders before they could be funneled to MBIA Inc. and its executives (Compl. ¶¶ 48-51).

In addition to these detailed direct allegations of fraudulent intent, "[d]ue to the difficulty of proving actual intent to hinder, delay or defraud creditors, the pleader is allowed to rely on 'badges of fraud' to support his case, i.e., circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent." *In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005); *N.Y. Dist. Council of Carpenters Pension Fund v. KW Constr., Inc.*, No. 07 Civ. 8008 (RJS), 2008 WL 2115225, *4-*5 (S.D.N.Y. May 16, 2008). The Complaint also alleges

badges of fraud that courts find sufficient to allege fraudulent intent.  It alleges that MBIA Inc. is

the parent company of both MBIA Insurance and MBIA Illinois and that MBIA Insurance

engaged in the transactions at the direction of MBIA Inc.  Compl. ¶¶ 4, 18, 39, 44; *In re Sharp*,

403 F.3d at 56 (close relationship among the parties to the transaction is a badge of fraud).  The

Complaint alleges that MBIA Insurance received inadequate consideration for the transactions.

Compl. ¶¶ 5, 27, 38, 40-41, 72, 77; *In re Sharp*, 403 F.3d at 56 (inadequate consideration is a

badge of fraud).  Plaintiffs allege that the transactions occurred after the "onset of financial

difficulties" at MBIA Insurance, and that MBIA Inc. designed the transactions so that it would

retain "possession, benefit or use" of the assets stripped from MBIA Insurance.  Compl. ¶¶ 4-5, 9,

13, 33-36, 39-40; *In re Kaiser*, 722 F.2d 1574, 1583 (2d Cir. 1983) (retention of the use and

benefit of property is "a classic badge of fraud").  The Complaint also alleges that MBIA

Insurance was made insolvent by the transactions.  Compl. ¶¶ 7, 9, 26, 44-45, 51, 53, 73; *Drenis v.

Haligiannis*, 452 F. Supp. 2d 418, 429 (S.D.N.Y. 2006) (transferor insolvency as a result of the

transaction is a badge of fraud).  Finally, the Complaint alleges that the transactions did not occur

in the usual course of business.  Compl. ¶¶ 4-6; *In re Sharp*, 403 F.3d at 56 (transfer not in the

usual course of business is a badge of fraud).

**B.      The Detailed Allegations Of The Complaint Also State A Claim For Constructive Fraudulent Conveyance**

Plaintiffs' constructive fraudulent conveyance claim under N.Y. D.C.L. §§ 273-75 is "not

subject to Rule 9(b)'s heightened pleading requirements."  *Drenis,* 452 F. Supp. 2d at 428.  A

claim for constructive fraudulent conveyance needs only meet "the bare-bones pleading

requirements of Rule 8."  *Care Envtl. Corp. v. M2 Techs., Inc.,* No. CV-05-1600 (CPS), 2006 WL

148913, at *10 (E.D.N.Y. Jan. 18, 2006).  Citing only to the language in the "counts" section of

the Complaint, the MBIA Defendants claim Plaintiffs only "parrot[] the legal standards" for

constructive fraudulent conveyance.  Defs.' Br. at 22.  The Court, of course, must consider the

Complaint as a whole, including those allegations of the Complaint "repeat[ed] and

incorporate[d]" in the "counts" section.  Compl. ¶ 76.  Plainly, the Complaint alleges facts

supporting the elements of constructive fraudulent conveyance.  The Complaint alleges in detail

the asset-stripping transactions that, without adequate consideration, left MBIA Insurance

insolvent (Compl. ¶¶ 1-6, 9, 26, 37-45, 51, 53, 78), left MBIA Insurance with unreasonably small

capital (Compl, ¶¶ 9, 13, 44, 79), and came at a time in which MBIA Insurance believed it would

incur debts beyond its ability to pay (Compl. ¶¶ 44, 46, 80).  These detailed allegations more than

surpass the allegations in cases in which motions to dismiss were denied.  *See Scantek Med., Inc.*

*v. Sabella and Accordant Holdings, LLC*, 583 F. Supp. 2d 477, 498 (S.D.N.Y. 2008) (upholding

fraudulent conveyance allegations of conveyance to a transferee company made without fair

consideration and resulting in unreasonably small capital); *In re Norstan Apparel Shops, Inc. v.*

*Lattman,* 367 B.R. 68, 77-80 (E.D.N.Y. 2007); *Intuition Consol. Group, Inc. v. Dick Davis Publ'g*

*Co.*, No. 03 Civ. 5063, 2004 WL 594651, at *3 (S.D.N.Y. Mar. 25, 2004).

**C.      The Complaint Alleges That Defendants Have Intentionally Denied Plaintiffs The Benefits Of Their Contracts And Therefore States A Claim For Breach Of The Implied Covenant Of Good Faith And Dealing**

The entirety of the MBIA Defendants' argument with respect to the implied covenant of

good faith and fair dealing rests on a false "straw man" that the Plaintiffs claim that the insurance

policies at issue guarantee "a particular credit rating."  Defs.' Br. at 24.  Not so.  The Complaint

alleges (1) that the MBIA Insurance policies guarantee full payment on the underlying securities

(Compl. ¶¶ 10, 24-25, 28, 31); (2) that a  "central purpose of . . . MBIA Insurance policies" is also

to provide "credit enhancement," meaning the enhancement of the credit rating of the underlying

insured securities with a strong investment grade credit rating of MBIA Insurance (Compl. ¶¶ 10,

12, 24-25, 28, 31, 37, 45, 51, 82); and (3) that the MBIA Defendants specifically marketed the

MBIA Insurance contracts on the basis of providing such "credit enhancement" based on MBIA Insurance's strong balance sheet and investment grade credit ratings (Compl. ¶¶ 25, 31; Shilling Decl. Ex. F (MBIA Insurance 2002 brochure stating: "As the foremost financial guarantor of structured financings . . ., MBIA provides Triple-A credit enhancement for a wide variety of asset classes.")).  That is why the MBIA Insurance certificates issued for the structured finance securities provided representations that MBIA Insurance's financial statements fairly presented the financial condition of MBIA Insurance.  Compl. ¶ 31; *see also* Shilling Decl. Ex. A at 1.  Indeed, as the Complaint alleges, "[w]ithout the financial condition of MBIA and its financial ratings, the MBIA Insurance policies had no purpose."  Compl. ¶ 31.

The Complaint alleges that the MBIA Defendants breached the implied covenant of good faith and fair dealing in the insurance contracts by transferring away for almost no consideration over $5.4 billion in assets from MBIA Insurance, and the only potentially ongoing portion of its business to benefit MBIA Inc. and its senior executives at the expense of the MBIA Insurance structured finance and foreign public finance policyholders, who are left with an insolvent company whose credit rating has been reduced to "junk" levels.  Compl. ¶¶ 2, 4-6, 11, 13, 20, 36, 38, 72, 77.  The implied covenant of good faith and fair dealing is designed to address exactly this situation – where a party does something to prevent its counterparty from enjoying the fruits of the contract.  *Dalton v. Educ. Testing Serv.,* 87 N.Y.2d 384, 388 (1995) ("Implicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance. . . . This embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."); *Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc.*, 361 F. Supp. 2d 283, 298 (S.D.N.Y. 2005).

MBIA cites a string of cases for the proposition that the implied covenant cannot be used to rewrite or add new terms to a contract, but Plaintiffs' implied covenant claim does *not* alter or

add to the contract. New York courts draw a clear distinction between shoehorning new terms into a contract, and simply protecting a party from being deprived of its right to enjoy the benefits of its bargain. Even the cases cited by MBIA acknowledge this distinction. For example, in *Rowe v. Great Atlantic & Pacific Tea Co*., 46 N.Y.2d 62, 70 (1978), the court noted that an implied covenant not to assign a lease could be recognized even in the absence of any contractual terms to that effect "if it [were] clear that a reasonable landlord would not have entered into the lease without such an understanding." Similarly here, no reasonable person would have purchased MBIA Insurance financial guaranty polices if he had known that MBIA Insurance would intentionally transfer away $ 5.4 billion of its assets and its sole viable business in an insider transaction knowing that it would be left insolvent and that its credit rating would plummet to "junk" levels. This denied the Plaintiffs the benefit of both the "unconditional guaranty" and the "credit enhancement" purposes of their MBIA Insurance contracts. *See Wallace v. Merrill Lynch Capital Servs.,* No. 602604/2005, 2005 WL 3487809, at *5 (N.Y. Sup. Ct. Dec. 14, 2005).[8]

## CONCLUSION

For the foregoing reasons, the Court should deny the motion to dismiss.[9]

---

[8] When Warren Buffett was recently asked about the MBIA Defendants' restructuring, he commented that "we would never dream of doing that because people would get burned." Buffett said the insurance companies under his management would never do such a thing, stating that "*[w]e will keep all promises*." *Buffett says pricing limits bond insurance biz,* Reuters (May 3, 2009), http://www.reuters.com/article/bondsNews/idUSN0333291420090503 (emphasis added).

[9] If the Court should grant any portion of the MBIA Defendants' motion, Plaintiffs request leave to replead.

Dated: May 18, 2009

Respectfully submitted,

SIMPSON THACHER & BARTLETT LLP

/s/ David W. Ichel
David W. Ichel (dichel@stblaw.com)
Barry R. Ostrager (bostrager@stblaw.com)
Patrick T. Shilling (pshilling@stblaw.com)
425 Lexington Avenue
New York, New York 10017
(212) 455-2000 (tel)
(212) 455-2502 (fax)

*Attorneys for Plaintiffs*